## **In re HO**, Petitioner

*In Visa Petition Proceedings*

WAC 98 072 50493

Decided by the Associate Commissioner, Examinations, July 31, 1998.

(1) Merely establishing and capitalizing a new commercial enterprise and signing a commercial lease are not sufficient to show that an immigrant-investor petitioner has placed his capital at risk. The petitioner must present, instead, evidence that he has actually undertaken meaningful concrete business activity.

(2) The petitioner must establish that he has placed his own capital at risk, that is to say, he must show that he was the legal owner of the invested capital. Bank statements and other financial documents do not meet this requirement if the documents show someone else as the legal owner of the capital.

(3) The petitioner must also establish that he acquired the legal ownership of the invested capital through lawful means. Mere assertions about the petitioner's financial situation or work history, without supporting documentary evidence, are not sufficient to meet this requirement.

(4) To establish that qualifying employment positions have been created, INS Forms I-9 presented by a petitioner must be accompanied by other evidence to show that these employees have commenced work activities and have been hired in permanent, full-time positions.

(5) In order to demonstrate that the new commercial enterprise will create not fewer than 10 full-time positions, the petitioner must either provide evidence that the new commercial enterprise has created such positions or furnish a comprehensive, detailed, and credible business plan demonstrating the need for the positions and the schedule for hiring the employees.

ON BEHALF OF PETITIONER:   JOHN L. SUN
                                         3550 WILSHIRE BOULEVARD,  SUITE 1250
                                         LOS ANGELES, CA  90010-2413

### DISCUSSION

The preference visa petition was approved by the Director, California Service Center, who certified the decision to the Associate Commissioner for Examinations for review. The decision of the director will be reversed.

The petitioner seeks classification as an alien entrepreneur pursuant to section 203(b)(5) of the Immigration and Nationality Act, 8 U.S.C. § 1153(b)(5), The director determined that the petitioner had already invest-

ed the requisite amount of capital, apparently obtained through lawful means. The director further found that, while the business had only two employees at the time of her decision, the business plan called for at least eight more employees within the next 12 months.

The petitioner has chosen not to respond.

Section 203(b)(5)(A) of the Act provides classification to qualified immigrants seeking to enter the United States for the purpose of engaging in a new commercial enterprise:

(i)   which the alien has established,

(ii)   in which such alien has invested (after the date of the enactment of the Immigration Act of 1990) or, is actively in the process of investing, capital in an amount not less than the amount specified in subparagraph (C), and

(iii)  which will benefit the United States economy and create full-time employment for not fewer than 10 United States citizens or aliens lawfully admitted for permanent residence or other immigrants lawfully authorized to be employed in the United States (other than the immigrant and the immigrant's spouse, sons, or daughters).

The petitioner indicates that the petition is based on the creation of a new business located in a targeted employment area, for which the required amount of capital invested has been adjusted downward.

MINIMUM INVESTMENT AMOUNT

8 C.F.R. § 204.6(e) states, in pertinent part, that:

*Targeted employment area* means an area which, at the time of investment, is a rural area or an area which has experienced unemployment of at least 150 percent of the national average rate.

On December 18, 1997, King's Wheel Corp. filed its articles of incorporation with the State of California. According to the petitioner, who is the president, director, and chief executive officer of the corporation, King's Wheel will import steel and aluminum automobile wheels from Taiwan and market them in the United States as a wholesaler. On December 20, 1997, the petitioner signed a lease on behalf of King's Wheel for an "office and warehouse" located at 350 W. Artesia Boulevard in Compton, California.

Compton is in Los Angeles County, and the most current information available from the California Employment Development Department indicates that all of Los Angeles County is an area of sufficiently high unemployment to qualify as a targeted area. Therefore, the amount of capital necessary to make a qualifying investment in this matter is $500,000.

## INVESTMENT OF QUALIFYING CAPITAL

8 C.F.R. § 204.6(e) states, in pertinent part, that:

*Capital* means cash, equipment, inventory, other tangible property, cash equivalents, and indebtedness secured by assets owned by the alien entrepreneur, provided the alien entrepreneur is personally and primarily liable and that the assets of the new commercial enterprise upon which the petition is based are not used to secure any of the indebtedness, ...

*Commercial enterprise* means any for-profit activity formed for the ongoing conduct of lawful business including, but not limited to, a sole proprietorship, partnership (whether limited or general), holding company, joint venture, corporation, business trust, or other entity which may be publicly or privately owned. This definition includes a commercial enterprise consisting of a holding company and its wholly-owned subsidiaries, provided that each such subsidiary is engaged in a for-profit activity formed for the ongoing conduct of a lawful business. This definition shall not include a non-commercial activity such as owning and operating a personal residence.

*Invest* means to contribute capital. A contribution of capital in exchange for a note, bond, convertible debt, obligation, or any other debt arrangement between the alien entrepreneur and the new commercial enterprise does not constitute a contribution of capital for the purposes of this part.

8 C.F.R. § 204.6(j) states, in pertinent part, that:

(2)  To show that the petitioner has invested or is actively in the process of investing the required amount of capital, the petition must be accompanied by evidence that the petitioner has placed the required amount of capital at risk for the purpose of generating a return on the capital placed at risk. Evidence of mere intent to invest, or of prospective investment arrangements entailing no present commitment, will not suffice to show that the petitioner is actively in the process of investing. The alien must show actual commitment of the required amount of capital. Such evidence may include, but need not be limited to:

(i)  Bank statement(s) showing amount(s) deposited in United States business account(s) for the enterprise;

(ii)  Evidence of assets which have been purchased for use in the United States enterprise, including invoices; sales receipts; and purchase contracts containing sufficient information to identify such assets, their purchase costs, date of purchase, and purchasing entity;

(iii)  Evidence of property transferred from abroad for use in the United States enterprise, including United States Customs Service commercial entry documents, bills of lading and transit insurance policies containing ownership information and sufficient information to identify the property and to indicate the fair market value of such property;

(iv)  Evidence of monies transferred or committed to be transferred to the new com-

mercial enterprise in exchange for shares of stock (voting or nonvoting, common or preferred), Such stock may not include terms requiring the new commercial enterprise to redeem it at the holder's request; or

(v) Evidence of any loan or mortgage agreement, promissory note, security agreement, or other evidence of borrowing which is secured by assets of the petitioner, other than those of the new commercial enterprise, and for which the petitioner is personally and primarily liable.

On December 30, 1997, the sum of $515,000 was transferred from an unidentified bank account to one of King's Wheel's business accounts at Cathay Bank, and the business account was credited $514,995. On January 5, 1998, the petitioner obtained 500,000 of the one million authorized shares of King's Wheel; the petitioner indicates that these shares were in exchange for $500,000.

## Capital at risk

Even though the petitioner owns only half of the authorized shares in King's Wheel, he is the sole shareholder thus far. He is also the only officer of the corporation. As such, the petitioner exercises sole control over the corporation's activities; whether the business proceeds according to plan or whether, for example, the business returns the petitioner's money is the petitioner's decision alone. Therefore, the petitioner cannot meet his at-risk requirement by merely depositing funds into a corporate account.

The business plan indicates that sales would commence in three to six months from the date of submission of the petition (January 12, 1998), yet the petitioner has not undertaken the necessary preparations to meet this deadline. The petitioner has not submitted evidence that King's Wheel has purchased inventory or office equipment. The petitioner has not shown that he has entered into negotiations with potential suppliers of wheels abroad, nor has he even identified who his potential suppliers are. The petitioner has not provided evidence that he has identified or entered into negotiations with potential buyers within the United States. The petitioner has not even furnished evidence that he has contracted with the suppliers of local utilities, such as the telephone or electric companies. The petitioner has not adequately explained how the business will go about spending the $500,000 that have been placed into its account. Although the petitioner has signed a lease for King's Wheel's showroom, the lease contains an escape clause at section 14, allowing King's Wheel to assign the lease or sublet the property with consent from the landlord.

The regulations provide that a petition must be accompanied by evidence that the petitioner has placed the required amount of capital at risk for the purpose of generating a return on the capital placed at risk. A mere

deposit into a corporate money-market account, such that the petitioner himself still exercises sole control over the funds, hardly qualifies as an active, at-risk investment.[1] Simply formulating an idea for future business activity, without taking meaningful concrete action, is similarly insufficient for a petitioner to meet the at-risk requirement. Before it can be said that capital made available to a commercial enterprise has been placed at risk, a petitioner must present some evidence of the actual undertaking of business activity; otherwise, no assurance exists that the funds will in fact be used to carry out the business of the commercial enterprise. This petitioner's de minimis action of signing a lease agreement, without more, is not enough.

## Source of funds

8 C.F.R. § 204.6(j) states, in pertinent part, that:

> (3) To show that the petitioner has invested, or is actively in the process of investing, capital obtained through lawful means, the petitioner must be accompanied, as applicable, by:
>
> (i) Foreign business registration records;
>
> (ii) Corporate, partnership (or any other entity in any form which has filed in any country or subdivision thereof any return described in this subpart), and personal tax returns including income, franchise, property (whether real, personal, or intangible), or any other tax returns of any kind filed within five years, with any taxing jurisdiction in or outside the United States by or on behalf of the petitioner;
>
> (iii) Evidence identifying any other source(s) of capital; or
>
> (iv) Certified copies of any judgments or evidence of all pending governmental civil or criminal actions, governmental administrative proceedings, and any private civil actions (pending or otherwise) involving monetary judgments against the petitioner from any court in or outside the United States within the past fifteen years.

To show that he has invested his own capital obtained through lawful means, the petitioner has furnished copies of bank statements showing that as of December 12, 1997, he had NT$1,339,447 (less than US$41,000[2]) on deposit at the Bank of Taiwan, and as of December 23, 1997, an individual named "Ho Wang Chung-Chia, Theresa Wang" had NT$6,255,844.52

---

[1] King's Wheel has two accounts at Cathay Bank: the money-market account into which the $514,995 were deposited and a commercial checking account containing $3,100. The petitioner has not shown any activity in either account.

[2] This figure assumes an exchange rate of NT$32.68 = US$1, which appears in the materials submitted by the petitioner. The current exchange rate is closer to NT$34.27 = US$1. WASHINGTON POST, July 21, 1998, at C10.

(US$191,427.31) on deposit at the First Commercial Bank. The petitioner has also submitted a letter from the United World Chinese Commercial Bank indicating that he holds 506,000 shares of capital stock in the bank, and as of December 22, 1997, those shares were worth NT$30,866,000. A letter from United Orthopedic Corporation states, "Mrs. Ho Wang Chung-Chia, also known as Theresa Wang has invested N.T.$1,000,000 in United Orthopedic Corp." On December 19, 1997, Ms. Chung-Chia Ho Wang's single unit on the 11th floor of an 18-story, 147-unit condominium in Taiwan was appraised at NT$6,502,348 (less than US$199,000).

The petitioner asserts that Chung-Chia Ho Wang is his wife; however, he has submitted no documentation, such as a marriage certificate, to substantiate this claim.[3] Even if Ms. Wang is the petitioner's wife, and even if her assets can be considered joint property, the petitioner has failed to establish the source of the funds transferred to the King's Wheel money-market account, totalling $515,000. Prior to the date of transfer, neither Taiwanese bank account contained sufficient funds; in fact, the two accounts together contained less than $250,000. Neither the petitioner nor Ms. Wang has sold any shares of stock in the Taiwanese corporations, and Ms. Wang appears still to own the condominium unit. As stated earlier, the wire-transfer receipt does not reveal from what bank account(s) the funds originated.

Furthermore, while the petitioner claims to have been a medical doctor in Taiwan, he has not presented any evidence of his having engaged in this occupation, nor has he provided any documentation regarding his level of income. The petitioner explains that, through his medical practice and investments, he has accumulated "liquid assets" of approximately US$1.4 million, and therefore the source of his $500,000 is lawful. The above documentation does not reflect $1.4 million in liquid assets; moreover, simply going on record without supporting documentary evidence is not sufficient for purposes of meeting the burden of proof in these proceedings. *See Matter of Treasure Craft of California*, 14 I&N Dec. 190 (Reg. Comm. 1972).

## EMPLOYMENT CREATION

8 C.F.R. § 204.6(j)(4)(i) states:

To show that a new commercial enterprise will create not fewer than ten (10) full-time positions for qualifying employees, the petition must be accompanied by:

(A) Documentation consisting of photocopies of relevant tax records, Form I-9, or

---

[3]The real-estate appraisal indicates that Ms. Wang's name changed to "Ho" after marriage, but "Ho" is a common Chinese name.

other similar documents for ten (10) qualifying employees, if such employees have already been hired following the establishment of the new commercial enterprise; or

(B) A copy of a comprehensive business plan showing that, due to the nature and projected size of the new commercial enterprise, the need for not fewer than ten (10) qualifying employees will result, including approximate dates, within the next two years, and when such employees will be hired.

8 C.F.R. § 204.6(e) states, in pertinent part:

*Employee* means an individual who provides services or labor for the new commercial enterprise and who receive wages or other remuneration directly from the new commercial enterprise...This definition shall not include independent contractors.

*Full-time employment* means employment of a qualifying employee by the new commercial enterprise in a position that requires a minimum of 35 working hours per week.

*Qualifying employee* means a United States citizen, a lawfully admitted permanent resident, or other immigrant lawfully authorized to be employed in the United States including, but not limited to, a conditional resident, a temporary resident, an asylee, a refugee, or an alien remaining in the United States under suspension of deportation. This definition does not include the alien entrepreneur, the alien entrepreneur's spouse, sons, or daughters, or any nonimmigrant alien.

As evidence that two positions have already been created, the petitioner has submitted two Forms I-9 completed just three days prior to the date he signed the Form I-526 petition. The business plan calls for the hiring of eight employees within the next 12 months: a secretary, an accounting clerk, a truck driver, two warehouse people, and three salespersons.

With respect to the two persons identified in the Forms I-9, the petitioner has not explained what positions they occupy, and it is not known whether they work full- or part-time or whether they work at all. Forms I-9 verify, at best, that a business has made an effort to ascertain whether particular individuals are authorized to work; they do not verify that those individuals have actually begun working. In the absence of such evidence as paystubs and payroll records showing the number of hours worked, the petitioner has not met his burden of establishing that he has created full-time employment within the United States.

In addition, as the business plan fails to reveal what these two individuals do, it is not altogether clear that they would still be needed once sales commenced and the business progressed beyond its "planning stage." The petitioner has not demonstrated that he has created permanent employment.

According to 8 C.F.R. § 204.6(j)(4)(i)(B), if a petitioner has not already met the employment-creation requirement, he must submit a comprehensive business plan from which it is clear that the business will in fact require

10 qualifying employees within the next two years. To be "comprehensive," a business plan must be sufficiently detailed to permit the Service to draw reasonable inferences about the job-creation potential. Mere conclusory assertions do not enable the Service to determine whether the job-creation projections are any more reliable than hopeful speculation.

A **comprehensive** business plan as contemplated by the regulations should contain, at a minimum, a description of the business, its products and/or services, and its objectives. The plan should contain a market analysis, including the names of competing businesses and their relative strengths and weaknesses, a comparison of the competition's products and pricing structures, and a description of the target market/prospective customers of the new commercial enterprise. The plan should list the required permits and licenses obtained. If applicable, it should describe the manufacturing or production process, the materials required, and the supply sources. The plan should detail any contracts executed for the supply of materials and/or the distribution of products. It should discuss the marketing strategy of the business, including pricing, advertising, and servicing. The plan should set forth the business's organizational structure and its personnel's experience. It should explain the business's staffing requirements and contain a timetable for hiring, as well as job descriptions for all positions. It should contain sales, cost, and income projections and detail the bases therefor.[4] Most importantly, the business plan must be credible.

Certainly no astute investor would place half a million or a million dollars into a business that he had not thoroughly researched. Creating a comprehensive business plan as described above is normal practice for any businessman seeking to operate a viable business. Without knowing whether a business is feasible and has the potential for long-term survival, neither the petitioner nor the Service can reasonably conclude that it will create permanent, full-time employment. It is not too onerous to ask a petitioner who has not yet met the employment-creation requirement to submit to the Service a real business plan. Other administrative agencies, such as the Small Business Administration, and private financial institutions routinely require the submission of detailed business plans before extending loans to businesses. Permanent resident status is no less significant a matter than a loan.

The petitioner's four-page "business plan" is wholly inadequate and fails to meet the petitioner's burden of showing that he will create 10 permanent, full-time positions within the next two years.

---

[4]The Service recognizes that each business is different and will require different information in its business plan. These guidelines, therefore, are not all-inclusive.

CONCLUSION

The petitioner is ineligible for classification as an alien entrepreneur because he has failed to establish that he has made an active, at-risk investment and has failed to clarify the source of his funds. The petitioner has further failed to demonstrate clearly that his proposed business will result in the requisite employment creation.

The burden of proof in these proceedings rests solely with the petitioner. Section 291 of the Act, 8 U.S.C. § 1361. The petitioner has not met that burden. Accordingly, the petition is denied.

**ORDER:** The decision of the director is reversed. The petition is denied.

## In re NEW YORK STATE
## DEPT OF TRANSPORTATION, Petitioner

*In Visa Petition Proceedings*

EAC 96 063 51031

Designated by the Acting Associate Commissioner, Programs,
August 7, 1998

(1) An alien seeking immigrant classification as an alien of exceptional ability or as a member of the professions holding an advanced degree cannot meet the threshold for a national interest waiver of the job offer requirement simply by establishing a certain level of training or education which could be articulated on an application for a labor certification.

(2) General arguments regarding the importance of a given field of endeavor, or the urgency of an issue facing the United States, cannot by themselves establish that an individual alien benefits the national interest by virtue of engaging in the field or seeking an as yet undiscovered solution to the problematic issue.

(3) A shortage of qualified workers in a given field, regardless of the nature of the occupation, does not constitute grounds for a national interest waiver. Given that the labor certification process was designed to address the issue of worker shortages, a shortage of qualified workers is an argument for obtaining rather than waiving a labor certification.

ON BEHALF OF PETITIONER: Jill Nagy
Lee and LeForestier, P.C.
Box 1054
Second Street
Troy, NY 12180

## DISCUSSION

The employment-based immigrant visa petition was denied by the Director, Vermont Service Center, and is now before the Associate Commissioner for Examinations on appeal. The appeal will be dismissed.[1]

The petitioner seeks to classify the beneficiary pursuant to section 203(b)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1153(b)(2), as

---

[1]This decision was originally entered on April 27, 1998. The matter has been reopened on Service motion for the limited purpose of incorporating revisions for publication.