345 F.3d 683
 Spencer Enterprises, Inc.; Li-Hui Chang, Plaintiffs-Appellants, and Chung-Chuan Sun; Jerry Chien-Hua Raan; Ping Fu Lu, Plaintiffs,
v.
UNITED STATES of America; UNITED STATES Department of Justice; Immigration and Naturalization Service, Defendants-Appellees.
 No. 01-16391.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted October 9, 2002 San Francisco, California.
 Filed September 17, 2003.
 
 COPYRIGHT MATERIAL OMITTED H. Ronald Klasko, Dechert, Philadelphia, Pennsylvania, for the plaintiffs-appellants.
 Nelda C. Reyna, United States Department of Justice, Washington, D.C., for the defendants-appellees.
 Appeal from the United States District Court for the Eastern District of California; Oliver W. Wanger, District Judge, Presiding. D.C. No. CV-99-06117 OWW/LJO.
 Before: Dorothy W. Nelson, Robert R. Beezer and Kim McLane Wardlaw, Circuit Judges.
 Opinion by D.W. NELSON; Dissent by Judge BREEZER.
 OPINION
 D.W. NELSON, Senior Circuit Judge.
 
 
 1
 Appellants Spencer Enterprises, Inc. ("Spencer"), and Li-Hui Chang brought suit in the district court to challenge the denial of an immigrant investor visa to Chang by the Immigration and Naturalization Service ("INS").[1] In applying for the visa, Chang had submitted a business plan developed in cooperation with Spencer, but INS determined that the application lacked credibility and consequently denied the visa petition. We write primarily to confirm the unchallenged assumption of the parties that the district court had jurisdiction in this matter.
 
 
 I. FACTUAL AND PROCEDURAL BACKGROUND
 
 
 2
 The immigrant investor program, or EB-5 program, established by the Immigration and Nationality Act ("INA"), allows aliens to receive permanent resident status upon the investment of a specified amount of capital and the creation of at least ten full-time jobs in the United States. 8 U.S.C. § 1153(b)(5). Ordinarily, the alien must invest $1,000,000; however, if the investment is made in a "targeted employment area" with an unemployment rate of 1.5 times the national average, only $500,000 need be invested. Id.; see also 8 C.F.R. § 204.6(f)(2).
 
 
 3
 In applying for an EB-5 visa, an alien entrepreneur must submit an I-526 petition and supporting documentation demonstrating that the required capital has been committed; that the investment is made from the alien's own lawfully acquired funds; and, if applicable, that the investment is being made in a targeted employment area with a high unemployment rate. If the ten full-time jobs have not been created at the time of the petition, a comprehensive business plan demonstrating the need for such jobs within two years must also be submitted. 8 C.F.R. § 204.6(j).
 
 
 4
 In 1998, in response to concerns about approvals of questionable investment plans, INS published four "precedent decisions" governing the handling of I-526 petitions. These decisions were designed to govern all future petitions, and clarified several requirements of the EB-5 program.
 
 
 5
 Chang is a citizen of Taiwan who seeks immigrant investor status. She incorporated FMA Enterprises, Inc., in California in December 1997. Her business plan involves an agreement with Spencer, a Fresno real estate developer. Spencer has used similar plans with seventeen previous aliens whose I-526 petitions were approved. According to the plan, FMA would place $500,000 in an escrow account, to be used to buy several lots[2] once Chang's I-526 petition was approved. The remainder of the money would be paid to Spencer for a "construction trust account"; FMA would then hire employees to build houses on these lots, although the employees would be managed by Spencer, which has been appointed general manager of FMA.
 
 
 6
 On May 4, 1998, Chang filed her first I 526 petition. Chang's petition was placed on hold because INS determined that it involved "elements that [were] under review" and that would be addressed in the precedent decisions. In September 1998, after the issuance of the precedent decisions, Chang filed a second I-526 petition. On October 15, 1998, INS sent Chang a request for additional information, noting that her business plan was not comprehensive, detailed, and credible, as required by the precedent decision In re Ho, 22 I. & N. Dec. 206, 1998 BIA LEXIS 29 at *17-18, 1998 WL 483979 (B.I.A.1998), and that there was insufficient evidence documenting the source of Chang's income. Chang submitted a new business plan and a variety of other documents in response.
 
 
 7
 Chang's petition was denied on January 27, 1999, and she appealed to the Administrative Appeals Office ("AAO"). The AAO denied her appeal on April 26, 1999, finding that Chang's credibility, and that of her business plan, was questionable; the source of the money deposited in the escrow account was unproven; Chang had failed to show that her investment would create permanent, full-time, continuous employment for ten employees within two years; Chang had failed to prove that Fresno was a targeted employment area and thus had not invested enough capital; and even if Chang was only required to invest $500,000, she had not placed this amount of money at risk.
 
 
 8
 After her motion to reconsider was denied, Chang filed suit in district court to challenge INS's action. On cross-motions for summary judgment, the district court held, in a decision dated March 27, 2001, that the AAO's decision was not arbitrary and capricious, and was supported by substantial evidence. The district court found that any one of the AAO's stated reasons for the denial of Chang's petition would be sufficient, and found that each one was supported by substantial evidence, based on a permissible interpretation of the law and regulations. The appellants filed an appeal with this Court.
 
 
 9
 Although not raised by the parties, the issue of jurisdiction came to this Court's attention in the course of considering the merits of the appeal. At oral argument, both parties agreed that this Court has jurisdiction over this matter. On January 10, 2003, this Court issued an order directing the parties to file supplemental briefs addressing the applicability of 8 U.S.C. § 1252(a)(2)(B)(ii), which prohibits judicial review of certain INS decisions. In their supplemental briefs, both parties again agreed that this Court has jurisdiction over this matter.
 
 
 II. JURISDICTION
 
 
 10
 This Court has the duty to consider subject matter jurisdiction sua sponte in every case, whether the issue is raised by the parties or not. "[E]very federal appellate court has a special obligation to `satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,' even though the parties are prepared to concede it." Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) (quoting Mitchell v. Maurer, 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338 (1934)); see also Fed.R.Civ.P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."). This Court's own jurisdiction is created by 28 U.S.C. § 1291, the general federal appellate jurisdiction statute.
 
 
 11
 The district court's jurisdiction is a more complex question. We first note that agency actions are generally reviewable under federal question jurisdiction, pursuant to 28 U.S.C. § 1331. See Califano v. Sanders, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) (holding that, except where statutes preclude review, 28 U.S.C. § 1331 "confer[s] jurisdiction on federal courts to review agency action"). Even if no statute specifically provides that an agency's decisions are subject to judicial review, the Supreme Court
 
 
 12
 customarily refuse[s] to treat such silence "as a denial of authority to [an] aggrieved person to seek appropriate relief in the federal courts," Stark v. Wickard, 321 U.S. 288, 309, 64 S.Ct. 559, 88 L.Ed. 733 (1944), and this custom has been "reinforced by the enactment of the Administrative Procedure Act, which embodies the basic presumption of judicial review to one `suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute.'" Abbott Laboratories v. Gardner, 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) (quoting 5 U.S.C. § 702).
 
 
 13
 Reno v. Catholic Soc. Serv., Inc., 509 U.S. 43, 56-57, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) (second alteration in original) (parallel citations omitted). The question before us, then, is whether any statute has deprived the federal courts of jurisdiction to review the particular agency action at issue here: INS's denial of an immigrant investor visa petition.
 
 
 A. The Administrative Procedure Act
 
 
 14
 The Administrative Procedure Act ("APA"), which generally provides the standards of review for agency action, also withdraws jurisdiction to review agency decisions that are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The Supreme Court has held that this provision applies only where "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," Heckler v. Chaney, 470 U.S. 821, 830, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), and has emphasized that such a situation only occurs in "rare instances." Id. (internal quotation marks omitted). Even where statutory language grants an agency "unfettered discretion," its decision may nonetheless be reviewed if regulations or agency practice provide a "`meaningful standard' by which this court may review its exercise of discretion." Socop-Gonzalez v. INS, 208 F.3d 838, 844 (9th Cir.2000).
 
 
 15
 In this case, we need not look to regulations or agency practice because the statutory framework provides meaningful standards by which to review INS's action. Although 8 U.S.C. § 1154(b) instructs that the Attorney General should "determine" whether the facts alleged by the visa petitioner are true and whether the petitioner is eligible for a visa under § 1153(b)(5), this determination is guided by the statutory requirements of the EB 5 program set out in § 1153(b)(5). Moreover, § 1154(b) provides that, upon determining that the petitioner is eligible, the Attorney General "shall ... approve the petition." Id. (emphasis added). It is certainly not the case that the statute here is "drawn in such broad terms that ... there is no law to apply." Heckler, 470 U.S. at 830, 105 S.Ct. 1649 (internal quotation marks omitted). Furthermore, we have previously reviewed denials of visa petitions according to the standards of the APA, see, e.g., Abboud v. INS, 140 F.3d 843, 846-47 (9th Cir.1998), without suggesting that there are no meaningful standards by which to review such denials. The APA does not preclude judicial review.
 
 
 16
 
 B. The Illegal Immigration Reform and Immigrant Responsibility Act
 
 
 
 17
 In 1996, Congress added 8 U.S.C. § 1252(a)(2)(B)(ii) to the immigration code as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). See IIRIRA, Pub. L. No. 104-208 Division C, § 306(a), 110 Stat. 3009-546, 3009-607 (1996). This section, the effects of which we asked the parties to address in their supplemental briefs, replaces an affirmative grant of jurisdiction under former 8 U.S.C. § 1105a and strips the federal courts of jurisdiction to review certain INS decisions:
 
 
 18
 Notwithstanding any other provision of law, no court shall have jurisdiction to review ... any other decision or action of the Attorney General the authority for which is specified under [8 U.S.C. §§ 1151-1378] to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a) of this title [relating to asylum].
 
 
 19
 Id. § 1252(a)(2)(B)(ii). In their supplemental briefs, which were very helpful to this Court, both the appellants and the Department of Justice argued that the decision to issue an immigrant investor visa is not "specified under[8 U.S.C. §§ 1151-1378] to be in the discretion of the Attorney General," see id., and therefore that 8 U.S.C. § 1252(a)(2)(B)(ii) does not preclude federal court review of such a decision.
 
 
 20
 At first glance, it is not immediately obvious what is meant by a decision "the authority for which is specified under [8 U.S.C. §§ 1151-1378] to be in the discretion of the Attorney General." Id. In the only Supreme Court decision to address § 1252(a)(2)(B)(ii), Zadvydas v. Davis 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), the Court determined that the legal question of "the extent of the Attorney General's authority" under a statute was "not a matter of discretion." Id. at 688, 121 S.Ct. 2491. Even if a statute gives the Attorney General discretion, therefore, the courts retain jurisdiction to review whether a particular decision is ultra vires the statute in question. But though this interpretation has narrowed the potential scope of § 1252(a)(2)(B)(ii) slightly, it is insufficient to decide the question presented here.
 
 
 21
 In IIRIRA's transitional rules, which govern cases pending at the time IIRIRA was enacted, Congress withdrew jurisdiction over "any discretionary decision" made pursuant to several enumerated sections of the INA. IIRIRA § 309(c)(4)(E), 110 Stat. at 3009-626. In Kalaw v. INS, 133 F.3d 1147 (9th Cir.1997), we interpreted the transitional rules to preclude review of several types of decisions: those that had previously been "reviewed for an abuse of discretion," id. at 1151, those that were "by the express terms of [a] statute... discretionary determination[s]," id. at 1152 (internal quotation marks omitted), and those that were "wholly discretionary," id.[3]
 
 
 22
 The language of § 1252(a)(2)(B)(ii), however, is sufficiently distinct from the language of the transitional rules to compel a different interpretation. This section refers not to "discretionary decisions," as did the transitional rules, but to acts the authority for which is specified under the INA to be discretionary. See id. Following the "well-established canon of statutory interpretation that the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words," SEC v. McCarthy, 322 F.3d 650, 656 (9th Cir. 2003), we must assume that this difference in language is legally significant. If Congress had intended to withdraw jurisdiction over all "discretionary decisions," it would have used the same language found in the transitional rules.
 
 
 23
 We find that the language of § 1252(a)(2)(B)(ii) differs from the transitional rules in at least two ways. First, the language of § 1252(a)(2)(B)(ii) requires that the discretionary authority be "specified" under the INA. "Specify" means "[t]o mention specifically," Black's Law Dictionary 1399 (6th ed. 1990); that is, the language of the statute in question must provide the discretionary authority. This interpretation finds support in Matsuk v. INS, 247 F.3d 999 (9th Cir.2001), the one reported Ninth Circuit case construing the scope of this provision. There, we held that language giving the Attorney General the authority to "determin[e] ... [that] an alien has been convicted of a particularly serious crime," 8 U.S.C. § 1231(b)(3)(B), was sufficient to specify that the Attorney General's authority was discretionary. Matsuk, 247 F.3d at 1002. Notably, we stated that "the Attorney General's discretion [was] pursuant to Section 1231(b)(3)(B)(ii)," id. (emphasis added). Thus, jurisdiction was precluded not simply because the decision at issue was discretionary, but because that discretion was specified in, or pursuant to, the statute in question.
 
 
 24
 The second significant difference is the requirement that the "authority ... be in the discretion of the Attorney General." 8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added). "Authority" may be defined as the "[r]ight to exercise powers; to implement and enforce laws ... to command; to judge." Black's Law Dictionary 133 (6th ed. 1990). "Discretion" means the power to act "according to [one's] own understanding and conscience." United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 267, 74 S.Ct. 499, 98 L.Ed. 681 (1954); see also 2 Am.Jur.2d Administrative Law § 63 (2002) (defining discretion as the power of officials to act "according to the dictates of their own judgment and conscience"). If the authority for a particular act is in the discretion of the Attorney General, therefore, the right or power to act is entirely within his or her judgment or conscience. Such acts are matters of pure discretion, rather than discretion guided by legal standards.
 
 
 25
 Support for this interpretation is found in the fact that many of the other provisions of IIRIRA, the act that created § 1252(a)(2)(B)(ii), do in fact specify that particular decisions are within the sole or unreviewable discretion of the Attorney General. See, e.g., IIRIRA § 301(b), 110 Stat. at 3009-577 (8 U.S.C. § 1182(a)(9)(B)(v)) (stating that the "Attorney General has sole discretion to waive" a requirement); id. § 303(a), 110 Stat. at 3009-586 (8 U.S.C. § 1226(e)) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review."); id. § 304(a), 110 Stat. at 3009-594 (8 U.S.C. § 1229b(b)(2)(D)) (providing that the determination of credibility and weight of evidence "shall be within the sole discretion of the Attorney General"). Our interpretation is also bolstered by the fact that the heading of paragraph § 1252(a)(2)(B) is entitled "Denials of discretionary relief," indicating that it applies primarily to forms of relief that are within the Attorney General's sole discretion to grant.
 
 
 26
 Another example of the type of decisions whose authority is specified by statute to be entirely discretionary, and would therefore be covered by § 1252(a)(2)(B)(ii), is the granting of asylum. The Attorney General "may grant asylum" to aliens who qualify, 8 U.S.C. § 1158(b)(1) (emphasis added), but need not. Despite the fact that there may be many non-discretionary elements of asylum eligibility, the ultimate authority whether to grant asylum rests entirely in the discretion of the Attorney General. Congress specifically exempted asylum determinations from § 1252(a)(2)(B)(ii), but this exemption demonstrates its recognition that such decisions would otherwise be covered. Similarly, the decision at issue in Matsuk — whether to classify an alien's past offense as a "particularly serious crime" under § 1231(b)(3)(B) — is a decision that is entirely lacking in statutory guidelines. Under the language of the statute, this decision is left entirely to the discretion of the Attorney General, with no governing statutory standards.
 
 
 27
 This interpretation of § 1252(a)(2)(B)(ii) is, admittedly, quite similar to the interpretation of "committed to agency discretion by law" under 5 U.S.C. § 701(a)(2), raising the possibility that § 1252(a)(2)(B)(ii) could be merely redundant to the APA's jurisdictional bar. Although "the rule against redundancy" is only "one rule of construction among many," and "does not necessarily have the strength to turn a tide of good cause to come out the other way," Gutierrez v. Ada, 528 U.S. 250, 258, 120 S.Ct. 740, 145 L.Ed.2d 747 (2000), it is nonetheless a "cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant." Kungys v. United States, 485 U.S. 759, 778, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988). We find that the two provisions are not identical, however, because § 1252(a)(2)(B)(ii) withdraws jurisdiction wherever discretionary authority is "specified" by statute. As noted above, under the APA, even a decision that is wholly discretionary by statute may be reviewed if regulations or agency practice provide standards by which an agency's conduct may be judged. Under § 1252(a)(2)(B)(ii), such standards must be found in the statutes; if the statute specifies that the decision is wholly discretionary, regulations or agency practice will not make the decision reviewable.
 
 
 28
 We recognize that our interpretation of § 1252(a)(2)(B)(ii) may be in tension with that of one of our sister circuits. In Van Dinh v. Reno, 197 F.3d 427 (10th Cir. 1999), the Tenth Circuit determined that § 1252(a)(2)(B)(ii) deprives "jurisdiction to review any decision or action the Attorney General has discretion to make" under §§ 1151-1378. 197 F.3d at 433. We do not find this statement persuasive, however, for several reasons. First, this interpretation was entirely unnecessary to the Tenth Circuit's holding because the court had already held that 8 U.S.C. § 1252(f) withdrew jurisdiction over the action. See 197 F.3d at 433. Second, although Van Dinh states that it is giving effect to the "literal meaning" of the statute, id. at 434, it fails to observe that the plain language of § 1252(a)(2)(B)(ii) requires that discretionary authority be specified by statute. Finally, Van Dinh does not mention the transitional rules or the differences in language between them and § 1252(a)(2)(B)(ii). Thus, we see little real conflict between our holding and that of Van Dinh.
 
 
 29
 Applying § 1252(a)(2)(B)(ii) here, we find that the authority to issue a visa under the immigrant investor program is not specified by any statute to be discretionary. Instead, the authority comes directly from § 1153(b)(5), which both mandates issuance of such visas, see 8 U.S.C. § 1153(b)(5)(A) ("Visas shall be made available ... to qualified immigrants seeking to enter the United States for the purpose of engaging in a new commercial enterprise...." (emphasis added)), and sets out a series of standards for eligibility that the visa petitioner must meet. Although, like the statute in Matsuk, § 1154(b) does allow the Attorney General to "determine" the petitioner's eligibility, the determination here is clearly guided by the eligibility requirements set out in § 1153(b)(5), whereas the discretionary determination in Matsuk is unguided. Moreover, as noted above, § 1154(b) directs that the Attorney General "shall ... approve the petition" of any visa petitioner who is determined to be eligible. This language is very distinct from the discretionary language in the asylum context, which allows the Attorney General to deny asylum even to those applicants who meet the statutory eligibility requirements.[4] We conclude that § 1252(a)(2)(B)(ii) does not preclude judicial review of the decision whether to issue a visa pursuant to § 1153(b)(5).
 
 
 30
 The appellants also suggest an alternate basis for the inapplicability of § 1252(a)(2)(B)(ii): that this section only applies to decisions made in the context of removal proceedings. On this issue the government disagrees; it argues that the plain language of the statute extends its reach to all decisions taken under 8 U.S.C. §§ 1151-1378.
 
 
 31
 There is a split in authority as to the applicability of § 1252(a)(2)(B)(ii) outside the context of removal proceedings. Several district courts, after examining § 1252 as a whole, have determined that Congress only intended this section to apply to decisions made in the context of removal proceedings. See Talwar v. Immigration & Naturalization Serv., 2001 U.S. Dist. LEXIS 9248 at *12, 2001 WL 767018, *4 (S.D.N.Y. July 9, 2001); Mart v. Beebe, 94 F.Supp.2d 1120, 1123-24 (D.Or.2000); Burger v. McElroy, 1999 U.S. Dist. LEXIS 4854 at *4, 1999 WL 203353, *1 (S.D.N.Y. Apr. 12, 1999); Shanti v. Reno, 36 F.Supp.2d 1151, 1157-60 (D.Minn.1999). These cases hold that § 1252(a)(2)(B)(ii) should be read in the context of the entirety of § 1252, which generally concerns orders of removal or actions taken in the removal process; the title of § 1252 is "Judicial review of orders of removal." See, e.g., Mart, 94 F.Supp.2d at 1123-24. This interpretation is bolstered by the fact that the former 8 U.S.C. § 1105a, which § 1252 replaced, was concerned solely with judicial review of orders of deportation and exclusion, and is consistent with our caselaw holding that, in interpreting IIRIRA, "we should construe narrowly restrictions on jurisdiction." Montero-Martinez v. Ashcroft, 277 F.3d 1137, 1141 (9th Cir. 2002).[5]
 
 
 32
 Other courts have determined that § 1252(a)(2)(B)(ii) applies to all decisions made under §§ 1151-1378; the leading case in this camp is the Sixth Circuit's decision in CDI Information Services, Inc. v. Reno, 278 F.3d 616, 618-20 (6th Cir. 2002). This position relies primarily on the plain language of the statute, and the principle that "the title of a statute and the heading of a section cannot limit the plain meaning of the text." Bhd. of R.R. Trainmen v. Baltimore & Ohio R.R., 331 U.S. 519, 528-29, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947).
 
 
 33
 Because we hold that the decision whether to issue an immigrant investor visa is not discretionary, we need not decide whether § 1252(a)(2)(B)(ii) applies outside the context of removal proceedings. Even if it does, it would not preclude jurisdiction in this case.
 
 
 III. STANDARD OF REVIEW
 
 
 34
 This Court reviews the district court's grant of summary judgment de novo. McDade v. West, 223 F.3d 1135, 1139 (9th Cir.2000). Under the Administrative Procedure Act, which guides our review of agency actions, an agency decision or finding of fact may be reversed if it is "arbitrary, capricious, [or] an abuse of discretion," or "unsupported by substantial evidence." 5 U.S.C. § 706.
 
 IV. MERITS OF THE APPEAL
 
 35
 As noted above, INS rejected Chang's petition on several different grounds, relying primarily upon the 1998 precedent decisions. We first consider the applicability of the precedent decisions to Chang's petition. Having determined that the precedent decisions do apply here, we examine the grounds on which the petition was denied. As the district court correctly noted, any one of these grounds would be sufficient to reject the petition. We first consider INS's adverse credibility determination, and, finding merit in this basis for denial of Chang's petition, need not reach the other grounds.
 
 
 A. Applicability of INS precedent decisions
 
 
 36
 The appellants argue that the 1998 INS precedent decisions should not have been applied to Chang's petition because her investment was made prior to the issuance of the decisions. In R.L. Investment Limited Partners v. INS, 86 F.Supp.2d 1014 (D.Haw.2000) ("RLILP"), the district court held that the same precedent decisions could be applied to an I-526 petition filed prior to the issuance of the decisions, because the decisions did not effect a change in existing law. Id. at 1018, 1024-1025. That decision was subsequently adopted by this Court, and is binding precedent. See 273 F.3d 874 (9th Cir. 2001).
 
 
 37
 We distinguished RLILP in Chang v. United States, 327 F.3d 911 (9th Cir.2003). The immigrant investors in that case were not similarly situated to the RLILP plaintiffs because, prior to the issuance of the precedent decisions, their I-526 petitions had already been approved. Id. at 926. They had made significant commitments in reliance on the approval of their petitions, and we ultimately concluded that retroactive application of the precedent decisions to this class of immigrants was impermissible. Id. at 929.
 
 
 38
 We see no comparable basis on which to distinguish RLILP here. Chang withdrew her first petition after being notified that it contained problematic features, and her current petition was not even filed, let alone approved, before the precedent decisions were issued. Even if the current petition could be said to "relate back" to the original petition, however, under RLILP the precedent decisions can be applied to petitions that were filed before the issuance of the decisions. RLILP, 86 F.Supp.2d at 1024-25.
 
 
 39
 Appellants argue that Chang's situation is different from that of the RLILP plaintiffs because her investment was made prior to the issuance of the precedent decisions. But the "investment" in RLILP was of exactly the same character as the investment here — $500,000 placed in an escrow account to be paid out only on approval of the I-526 petition — and this question is therefore squarely controlled by RLILP. Id. at 1027 n. 2. INS did not act improperly in applying the precedent decisions.
 
 
 B. Credibility of Chang's petition
 
 
 40
 The regulations for the EB-5 program require that, if the alien entrepreneur has not actually created ten full-time jobs at the time of application, the I-526 petition must be accompanied by "a comprehensive business plan showing that ... the need for not fewer than ten (10) qualifying employees will result ... within the next two years." 8 C.F.R. § 204.6(j)(4)(B). In the precedent decision In re Ho, INS found that "the business plan must be credible." Ho, 1998 BIA LEXIS 29 at *18, 1998 WL 483979. This rule was applied by the AAO to determine that Chang's business plan was not credible, and that due to this lack of credibility, she had failed to prove the need for ten workers.
 
 
 41
 Although the appellants assert that the credibility determination was based only on a typographical error in one document, the AAO decision details numerous findings that raise questions about the business plan, including: (1) that Chang initially submitted only a four-page "business plan" with her petition;[6] (2) that Chang twice claimed to plan to purchase a lot from Spencer that had already been sold to another corporation; (3) discrepancies between two sales and construction agreements between FMA and Spencer; (4) discrepancies between the number-of-workers — to — sales-volume ratio proposed by FMA versus Spencer's actual number-of-workers — to — sales-volume ratio; (5) that FMA would be operated out of Spencer's offices; (6) that all of the funds from Spencer's numerous immigrant investors are in one escrow account; (7) that the escrow instructions allow Spencer to begin construction on the lots promised to FMA prior to the close of escrow; (8) discrepancies as to who the escrow agent is; (9) concerns that some of the Chinese language translations provided by Chang were inaccurate; and (10) that monies were deposited in escrow on behalf of FMA before FMA was incorporated.
 
 
 42
 A few errors or minor discrepancies are not reason to question an alien's credibility. See, e.g., Shah v. INS, 220 F.3d 1062, 1068 (9th Cir.2000). Numerous errors and discrepancies, however — especially where INS is evaluating the credibility of a business plan — raise serious concerns about the viability of the enterprise. In this case, the findings catalogued above constitute substantial evidence for the AAO's determination that Chang's business plan was not credible enough to demonstrate the need for ten full-time workers. The denial of the petition on this basis was not arbitrary, capricious, or an abuse of discretion.
 
 
 V. CONCLUSION
 
 
 43
 The district court's judgment is therefore AFFIRMED. Each party shall bear its own costs.
 
 
 44
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 As of March 1, 2003, the Immigration and Naturalization Service ceased to exist, its functions largely transferred to the Bureau of Border Security and the Bureau of Citizenship and Immigration ServicesSee Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135. As of this writing, the conforming amendments to the Immigration and Nationality Act have not been completed, and none of the statutes at issue here has been affected.
 
 
 [2]
 The lots would be purchased from Clovis Ranch Development Co. and Land Development Strategies, Inc., which are also controlled by Richard Spencer, Spencer Enterprises's president
 
 
 [3]
 Our dissenting colleague urges a similarly broad construction of § 1252(a)(2)(B)(ii)
 
 
 [4]
 The dissent argues that 8 U.S.C. § 1155, allowing visa petitions to be revoked for "good and sufficient cause," indicates that visa decisions are wholly discretionary. But the decision at issue here is not a revocation under § 1155, and in any case we have previously interpreted the words "good and sufficient cause" to require INS to produce "substantial evidence supporting its determination" that a petition should be revokedTongatapu Woodcraft Hawaii, Ltd. v. Feldman, 736 F.2d 1305, 1309 (9th Cir.1984). Thus the text of § 1155 no more specifies visa decisions to be in the unfettered discretion of the Attorney General than does the text of §§ 1153(b)(5) and 1154(b).
 
 
 [5]
 This restrictive interpretation of the scope of § 1252(a)(2)(B)(ii) is also suggested byAbboud v. INS, 140 F.3d 843 (9th Cir.1998), which noted that "district courts have jurisdiction over final orders of INS that do not involve deportation itself." Id. at 846. But because Abboud relied on preIIRIRA caselaw and did not cite to § 1252(a)(2)(B)(ii), we decline to reach the difficult question of whether its holding controls the interpretation of this section.
 
 
 [6]
 The AAO's decision states that the initial business plan was only two pages long. Our review of the record indicates that, in addition to the two pages of text, the first business plan also included two pages of diagrams and charts
 
 
 
 45
 BEEZER, Circuit Judge, dissenting.
 
 
 46
 It is well established that the decision to grant or deny a visa petition is discretionary. The opinion of the court filed today is the first to hold that 8 U.S.C. § 1252(a)(2)(B)(ii) does not bar federal court jurisdiction over a discretionary decision of the Attorney General. The court's opinion improperly holds that we have jurisdiction. In doing so, the court creates an inter-circuit and intra-circuit split. In addition, the court fails to give due deference to the Executive Branch in the immigration context.
 
 
 47
 I respectfully dissent.
 
 
 48
 * The court's opinion relies on general federal question jurisdiction under 28 U.S.C. § 1331, and applies the Administrative Procedures Act's (APA) standards of judicial review under 5 U.S.C. § 706, to affirm the district court's judgment.
 
 
 49
 General federal question jurisdiction under 28 U.S.C. § 1331, however, is not available where judicial review is precluded by statute. See Califano v. Sanders, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). In addition, application of the APA is not appropriate where a statute precludes judicial review. 5 U.S.C. § 701(a)(1). Judicial review of this petition is precluded by statute. 8 U.S.C. § 1252(a)(2)(B)(ii). We lack jurisdiction.
 
 II
 
 50
 We consider subject matter jurisdiction in every appeal to this court, even where the parties do not contest jurisdiction. Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir.1979). "[W]e retain jurisdiction to determine our own jurisdiction." Abreu-Reyes v. INS, 292 F.3d 1029, 1031 (9th Cir.2002).
 
 III
 
 51
 The issue of jurisdiction is controlled by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009. The Illegal Immigration Reform and Immigrant Responsibility Act amended the Immigration and Nationality Act (INA) by, among other things, limiting federal court jurisdiction over certain immigration cases. The Illegal Immigration Reform and Immigrant Responsibility Act amendments to the INA were meant to exclude from judicial review the Executive Branch's exercise of discretion. Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 486, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (stating that "protecting the Executive's discretion from the courts ... can fairly be said to be the theme of the legislation").
 
 
 52
 In particular, the Illegal Immigration Reform and Immigrant Responsibility Act amendments contain a number of provisions eliminating judicial review of various Immigration and Naturalization Service (INS) decisions. Among these provisions is 8 U.S.C. § 1252(a)(2)(B)(ii), which states, in part: "Notwithstanding any other provision of law, no court shall have jurisdiction to review ... any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General."[1]
 
 
 53
 Section 1252(a)(2)(B)(ii) is very straightforward: it deprives the courts of jurisdiction to review the Attorney General's discretionary decisions. The court today, however, tortures the plain reading of § 1252(a)(2)(B)(ii) in an attempt to obfuscate the fact we, as well as other circuits, have held that § 1252(a)(2)(B)(ii) precludes judicial review of the Attorney General's discretionary decisions. See Matsuk v. INS, 247 F.3d 999 (9th Cir.2001); Van Dinh v. Reno, 197 F.3d 427, 435 (10th Cir.1999); CDI Info. Servs., Inc. v. Reno, 278 F.3d 616, 620 (6th Cir.2002).
 
 
 54
 In an attempt to retain jurisdiction, the court applies linguistic gymnastics and resorts to convenient canons of statutory interpretation to hold (1) that § 1252(a)(2)(B)(ii) only applies to certain types of discretionary decisions and (2) that "the decision whether to issue an immigrant investor visa is not discretionary." I disagree.
 
 
 55
 * The types of discretionary decisions encompassed by § 1252(a)(2)(B)(ii), according to the court, are only those which are "specified by statute to be entirely discretionary." [Court's opinion at 690]. In doing so, the court has essentially added another word into § 1252(a)(2)(B)(ii): "no court shall have jurisdiction to review ... any other decision or action of the Attorney General the authority for which is specified under this subchapter to be ENTIRELY in the discretion of the Attorney General" (word added).
 
 
 56
 To illustrate its point, the court provides several examples of statutes which "do in fact specify that particular decisions are within the sole or unreviewable discretion of the Attorney General." [Court's opinion at 690] (emphasis in original). The common element in the court's examples is the use of the words "sole" or "not ... subject to review" in describing the Attorney General's exercise of discretion. The court's message is that § 1252(a)(2)(B)(ii) does not reach discretionary decisions which are not specified to be entirely within the Attorney General's discretion, as evidenced by words such as "sole" or "unreviewable."
 
 
 57
 The narrow rule drawn by the court today conflicts with our decision in Matsuk. In Matsuk, we addressed whether § 1252(a)(2)(B)(ii) precludes judicial review over the Attorney General's determination whether a crime is a "particularly serious crime" under 8 U.S.C. § 1231(b)(3)(B)(ii). 247 F.3d at 1002. There is nothing in § 1231(b)(3)(B)(ii) which specifies in any way that the decision at issue is entirely within the discretion of the Attorney General.[2]
 
 
 58
 Instead of inquiring whether the decision was specified by statute to be entirely within the discretion of the Attorney General, in Matsuk, we recognized that the reality was that the decision at issue involved the Attorney General's exercise of discretion. We cited a BIA decision which states that the determination of whether a crime is particularly serious "requires an individual examination of the nature of the conviction, the sentence imposed, and the circumstances and underlying facts of the conviction." In re S-S-, Interim Decision 3374, 1999 WL 38822 (BIA Jan. 21, 1999) (cited in Matsuk, 247 F.3d at 1002). Matsuk does not engage in a mechanical or contrived evaluation of the text of the statute; rather, Matsuk examined the type of decision at issue and acknowledged that it involved discretion. 247 F.3d at 1002.
 
 
 59
 Like the case before us, the statute in Matsuk involved discretion by the very nature of the decision being made, not because of certain specific language used in the statute. There is nothing in the text of the statute in Matsuk that is explicitly discretionary. The court today disguises the fact that its rule creates an intra-circuit split by applying a strained hyper-textual reading of § 1252(a)(2)(B)(ii) in order to assert that Matsuk is in line with the rule.
 
 B
 
 60
 The rule today redefines what constitutes a discretionary decision.[3] It ignores that courts have consistently held that § 1252(a)(2)(B)(ii) bars judicial review of the Attorney General's discretionary decisions, even in cases where a statute authorizing the Attorney General's decision does not explicitly specify that the decision is entirely within the Attorney General's discretion.[4]
 
 
 61
 When explicit discretionary language is not used in the INA, discretion can be implied from the statute. See Johns v. Department of Justice, 653 F.2d 884, 890 (5th Cir.1981) ("The Attorney General is given discretion by express statutory provisions, in some situations.... In other instances, as the result of implied authority, he exercises discretion nowhere granted expressly."); see also United States ex rel. Salvetti v. Reimer, 103 F.2d 777, 779 (2nd Cir.1939) (asserting that "the exercise of a discretionary power conferred by implication" is not reviewable by the courts).
 
 
 62
 Our sister circuit has recognized that discretionary decisions that do not contain explicitly discretionary language are nevertheless barred from judicial review under § 1252(a)(2)(B)(ii). In Van Dinh v. Reno, 197 F.3d 427, 435 (10th Cir.1999), the court addressed the issue whether § 1252(a)(2)(B)(ii) precludes judicial review over the Attorney General's power to transfer aliens from one location to another under 8 U.S.C. §§ 1231(g)(1) or 1231(i)(4)(B).
 
 
 63
 The Van Dinh court found that the Attorney General's discretionary power under §§ 1231(g)(1) and 1231(i)(4)(B) arises from the statute, even though these sections state that the Attorney General "shall" act as instructed by the statute.[5] The statutory sections in Van Dinh do not specify that the decision is entirely within the Attorney General's discretion, as the court today would require; rather, the Van Dinh court recognized that use of the word "appropriate" in the statute implies the discretionary authority to determine what is appropriate. See also Avramenkov v. INS, 99 F.Supp.2d 210, 213 (D.Conn.2000) (holding that decisions under 8 U.S.C. § 1231(g)(1) are discretionary and not subject to judicial review under 8 U.S.C. § 1252(a)(2)(B)(ii)).
 
 
 64
 The court's opinion today holds that § 1153(b)(5) is not discretionary because it not only does not specify explicitly that the decision is within the sole or unreviewable discretion of the Attorney General, but because it is phrased as a mandate in that it uses the word "shall." This is completely at odds with Van Dinh, which also involved a statute using the word "shall." It is also in tension with Matsuk, which did not rely on specific words to indicate that a decision was entirely within the Attorney General's discretion, but rather holds that § 1252(a)(2)(B)(ii) precluded review based on the reality of the type of decision at issue.
 
 C
 
 65
 The reality is that the decision to approve an immigrant investor visa petition is discretionary. The immigrant investor visa is an employment-based preference visa under 8 U.S.C. § 1153(b). It is established as a matter of law that the granting of visa petitions, including petitions for preference visas, is within the discretion of the Attorney General. See Black Construction Corp. v. INS, 746 F.2d 503, 504 (9th Cir.1984) ("The decision whether to grant or deny a visa petition lies within the discretion of the INS....").[6]
 
 
 66
 "[A]dmission of an alien to this country is not a right but a privilege which is granted only upon such terms as the United States prescribes." Montgomery v. Ffrench, 299 F.2d 730, 734 (8th Cir.1962). Congress has plenary power to make policies and rules for exclusion of aliens. See Fiallo v. Bell, 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977); Kleindienst v. Mandel, 408 U.S. 753, 769-60, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972); Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 210, 73 S.Ct. 625, 97 L.Ed. 956 (1953). "Congress has explicitly delegated much of its power over immigration to the Attorney General." Aguilera v. Kirkpatrick, 241 F.3d 1286, 1292 (10th Cir.2001); see also 8 U.S.C. § 1103(a)(5). When Congress has not laid down rules or has left a gap in the statutory scheme, "its power devolves on the executive branch, which may then consider factors of its own choosing." Achacoso-Sanchez v. Immigration and Naturalization Service, 779 F.2d 1260, 1264 (7th Cir.1985). "[T]he authority of the executive branch to fill gaps is especially great in the context of immigration policy." Gonzalez v. Reno, 212 F.3d 1338, 1349 (11th Cir.2000).
 
 
 67
 The rule that Congress has laid down with respect to immigrant investor visas is that immigrant investor visas are available to immigrants who seek to enter the United States
 
 
 68
 for the purpose of engaging in a new commercial enterprise — (i) which the alien has established, (ii) in which [the] alien has invested ... capital in [a specified] amount ... and (iii) which will benefit the United States economy and create full-time employment for not fewer than 10 United States citizens or aliens lawfully admitted for permanent residence or other immigrants lawfully authorized to be employed in the United States.
 
 
 69
 8 U.S.C. § 1153(b)(5)(A).
 
 
 70
 Congress has explicitly given the Attorney General bounded discretionary authority to specify the amount of capital which must be invested in order to qualify for the immigrant investor visa. 8 U.S.C. § 1153(b)(5)(C).[7] In addition, because Congress "[did] not lay down rules" instructing how to define ambiguous terms, the Attorney General implicitly has the authority to determine what it means, for example, to "invest capital," what qualifies as "capital," what constitutes "a commercial enterprise" and whether a commercial enterprise will "benefit the United States economy." See Achacoso-Sanchez, 779 F.2d at 1264.
 
 
 71
 The Attorney General has promulgated regulations under 8 C.F.R. § 204.6 to assist in determining whether an alien is eligible for an immigrant investor visa. These regulations guide the Attorney General's exercise of discretion. See Stellas v. Esperdy, 366 F.2d 266, 269 (2nd Cir.1966), vacated and remanded on other grounds, 388 U.S. 462, 87 S.Ct. 2121, 18 L.Ed.2d 1322 (1967) ("[T]he Attorney General may govern the exercise of his discretion by written or unwritten rules; indeed it would be remarkable if he did not. Any such decision is an application of facts to principles[;] regulation[s] ... provide a substitute for the exercise of discretion on a case by case basis. But there has been an exercise of discretion.").[8]
 
 
 72
 When the Attorney General denies a preference visa petition because the petitioner does not satisfy the regulations the Attorney General has promulgated to guide his discretion in determining eligibility under 8 U.S.C. § 1153(b)(5) for an immigrant investor visa, the Attorney General is exercising his discretion. Because the Attorney General's decision to grant or deny a preference visa petition is a discretionary decision, § 1252(a)(2)(B)(ii) bars judicial review.[9] We lack jurisdiction to review the petition. See CDI Information Servs., Inc. v. Reno, 278 F.3d 616, 621 (6th Cir.2002) (holding that the federal courts are barred from reviewing an employee's non-immigrant visa decision under 8 U.S.C. § 1252(a)(2)(B)(ii)); Van Dinh, 197 F.3d at 435 (holding that 8 U.S.C. § 1252(a)(2)(B)(ii) barred review of a decision related to the custody and detention of deportable aliens); Systronics Corp. v. INS, 153 F.Supp.2d 7, 10-11 (D.D.C.2001) (holding that 8 U.S.C. § 1252(a)(2)(B)(ii) deprives the court of jurisdiction to decide a challenge to an INS decision concerning an immigrant petition for an alien worker).
 
 IV
 
 73
 I am troubled by the court's opinion for another reason. The court's opinion neglects to give due deference to the Executive Branch in the immigration context. See INS v. Aguirre-Aguirre, 526 U.S. 415, 424, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999) (acknowledging that "judicial deference to the Executive Branch is especially appropriate in the immigration context"). This circuit has been unanimously reversed recently for failing to give due deference to the Executive Branch. See INS v. Ventura, 537 U.S. 12, 123 S.Ct. 353, 355-56, 154 L.Ed.2d 272 (2002) (observing that the Ninth Circuit "seriously disregarded the [INS's] legally-mandated role" and observing that the Ninth Circuit encroached "upon the domain which Congress has exclusively entrusted to an administrative agency"). In failing to give appropriate judicial deference to the Executive Branch, the court oversteps its jurisdiction.
 
 
 74
 "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (internal citations omitted). In enacting the Illegal Immigration Reform and Immigrant Responsibility Act, Congress clearly expressed an intent to shield Executive Branch discretion in the area of immigration. The court's opinion impermissibly attempts to maintain that federal court jurisdiction still exists, even though Congress has specifically precluded judicial review in an effort to protect Executive Branch discretion. I see no reason to engage in a charade to preserve federal court jurisdiction in an area where Congress has spoken so clearly.
 
 V
 
 75
 The court's opinion attempts to expand Ninth Circuit jurisdiction in direct defiance of § 1252(a)(2)(B)(ii). The court proposes to apply the statutory bar only to review of discretionary decisions which by statute are specified to be entirely within the Attorney General's discretion. As cases such as Matsuk and Van Dinh teach us, though, the relevant question is not whether a statute explicitly states that a decision is within the "sole" or "unreviewable" discretion of the Attorney General, but rather, whether a decision is in fact discretionary.
 
 
 76
 Our circuit and other circuits have recognized repeatedly that the Attorney General has discretion over visa petitions. See supra, n. 8. Section 1252(a)(2)(B)(ii) bars judicial review of the Attorney General's discretionary decisions. The court's opinion improperly holds that 8 U.S.C. § 1252(a)(2)(B)(ii) does not bar judicial review over the decision to grant or deny a visa petition.
 
 
 77
 I respectfully dissent.
 
 
 
 Notes:
 
 
 [1]
 The referenced subchapter is subchapter II of Chapter 12 of Title 8, which covers sections 1151 through 1378. Sections 1153 and 1154, which govern the allocation and granting of immigrant visas in general (and the preference allocation of immigrant investor visas in particular, 8 U.S.C. § 1153(b)(5)), falls within the subchapter
 
 
 [2]
 8 U.S.C. § 1231(b)(3) states that "the Attorney General may not remove an alien to a country if the Attorney General decide that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(B)(ii) outlines exceptions to the above rule, including instances where "the Attorney General decides that ... the alien, having been convicted by a final judgment of a particularly serious crime is a danger to the community of the United States."
 
 
 [3]
 The court's interpretation of § 1252(a)(2)(B)(ii) draws from case law interpreting when application of the APA is precluded, under 5 U.S.C. § 701(a)(2), because an action is "committed to agency discretion." The case law holds that an action is "committed to agency discretion" when a statute lacks guidelines against which to review an agency's exercise of discretionSee Heckler v. Chaney, 470 U.S. 821, 830, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). The court's reliance on such case law is misguided.
 There is a fundamental difference between the APA and the Illegal Immigration Reform and Immigrant Responsibility Act. The APA's purpose is to give courts standards by which to review executive agency action. See Califano, 430 U.S. at 104, 97 S.Ct. 980 (noting that the APA "undoubtedly evinces Congress' intention and understanding that judicial review should be widely available to challenge the actions of federal administrative officials"). The Illegal Immigration Reform and Immigrant Responsibility Act's purpose is to deprive courts of the ability to review executive agency action in the area of immigration. See American-Arab Anti-Discrimination Comm., 525 U.S. at 486, 119 S.Ct. 936. One statute bestows standards of judicial review, while the other prohibits judicial review. Comparing the two is akin to comparing fire to ice.
 
 
 [4]
 The court deduces that the permanent rules to the Illegal Immigration Reform and Immigrant Responsibility Act do not preclude judicial review of all discretionary decisions because the Act's transitional rules more specifically, and therefore more broadly, precluded judicial review of "discretionary decisions." [Court's opinion at 689-690]. The court's interpretation of the Act's scheme defies logic. As we have already noted, the Act's purpose is to deprive courts of the ability to review executive agency action in the area of immigrationSee American-Arab Anti-Discrimination Comm., 525 U.S. at 486, 119 S.Ct. 936. The court's assertion that the transitional rules more broadly precluded judicial review, while the permanent rules only narrowly preclude judicial review, flies in the face of Congress's clear intent.
 
 
 [5]
 8 U.S.C. § 1231(g)(1) states: "The Attorney Generalshall arrange for appropriate places of detention for aliens detained pending removal" (emphasis added). 8 U.S.C. § 1231(i)(4)(B) states: "The Attorney General shall ensure that undocumented criminal aliens incarcerated in Federal facilities pursuant to this subsection are held in facilities which provide a level of security appropriate to the crimes for which they were convicted" (emphasis added).
 
 
 [6]
 See also North Am. Indus. v. Feldman, 722 F.2d 893, 898 (1st Cir.1983) ("[T]he decision to grant or deny a petition to obtain a preferential immigration classification is one that is within the discretion of INS...."); Dong Sik Kwon v. INS, 646 F.2d 909, 917 (5th Cir. 1981) ("[D]iscretion is given to the Attorney General to admit [visa] applicants."); Roumeliotis v. INS, 304 F.2d 453, 455 (7th Cir.1962) ("It is solely within the discretion of the Attorney General to determine whether an alien is entitled to a ... preference visa...."); Madany v. Smith, 696 F.2d 1008, 1012 (D.C.Cir. 1983) ("There is no doubt that the authority to make preference classification decisions rests with the INS."); Mila v. Dist. Director of Denver, Colorado Dist. of INS, 678 F.2d 123, 125 (10th Cir.1982), cert. denied, 459 U.S. 1104, 103 S.Ct. 726, 74 L.Ed.2d 952 (1983) ("A federal court may reverse an INS denial of a preferential visa petition only if the INS abused its discretion."); Reyes v. INS, 478 F.Supp. 63, 65 (E.D.N.Y.1979) ("Granting preference visas is within the discretion of the INS...."); Elatos Restaurant Corp. v. Sava, 632 F.Supp. 1049, 1053 (S.D.N.Y.1986) ("[T]he INS is accorded broad discretion to grant or deny visa preference classifications."); Lindenberg v. U.S. Dept. of Justice, 657 F.Supp. 154, 157 (D.D.C.1987) ("[T]he granting of preference visas is within the sound discretion of the INS."); Louisiana Philharmonic Orchestra v. INS, 44 F.Supp.2d 800, 802 (E.D.La.1999) ("INS enjoys broad discretion in deciding whether to grant or deny visa preference classifications."); Chi-Feng Chang v. Thornburgh, 719 F.Supp. 532, 535 (N.D.Tex.1989) ("The INS is accorded broad discretion in granting or denying visa preference petitions.").
 
 
 [7]
 8 U.S.C. § 1153(b)(5)(C) states:
 (i) ... The Attorney General, in consultation with the Secretary of Labor and the Secretary of State, may from time to time prescribe regulations increasing the dollar amount specified.... (ii) The Attorney General may, in the case of investment made in a targeted employment area, specify an amount of capital required [within a range]. (iii) In the case of an investment made [in a high employment area] the Attorney General may specify an amount of capital required [within a range].
 
 
 [8]
 Here, the regulations state that an immigrant investor's petition must be filed with a regional Service Center. 8 C.F.R. § 204.6(b). The Attorney General's discretion over immigrant investor visas is exercised by Service "Center directors [who] are delegated the authority to grant or deny any application or petition submitted to the Service." 8 C.F.R. § 103.1(f)(3)(v)
 
 
 [9]
 The court's opinion notes that some district courts limit 8 U.S.C. § 1252(a)(2)(B)(ii) to the removal context only and hold that discretionary decisions outside the removal context are not barredSee, e.g., Shanti, Inc. v. Reno, 36 F.Supp.2d 1151, 1158 (D.Minn.1999); Mart v. Beebe, 94 F.Supp.2d 1120, 1124 (D.Or.2000) (construing 8 U.S.C. § 1252(a)(2)(B)(i)).
 These courts, however, ignore the plain language reading of the statute. Id. Every circuit court to address the scope of 8 U.S.C. § 1252(a)(2)(B)(ii) holds that the statute is not limited to the removal context. See CDI Info. Servs., Inc. v. Reno, 278 F.3d 616, 620 (6th Cir.2002); Van Dinh v. Reno, 197 F.3d at 435. I, too, would hold that 8 U.S.C. § 1252(a)(2)(B)(ii) is not limited to discretionary decisions made within the context of removal proceedings.