PUBLISH

**F I L E D**
United States Court of Appeals
Tenth Circuit

**NOV 18 1999**

UNITED STATES COURT OF APPEALS

**PATRICK FISHER**
Clerk

TENTH CIRCUIT

---

TUONG HUAN VAN DINH; OSCAR
GARCIA-PEREZ; MESERET
ANTANAW WASSIE; BENIGNO
PALAGANAS-SUAREZ; LOI
NGUYEN; JUAN CISNEROS;
CELESTE FERGUSON; JANE DOE
and JOHN DOE as UNNAMED
DETAINEES AT WCC/INS,
individually, and on behalf of all other
persons similarly situated,

        Plaintiffs-Appellants,

v.

JANET RENO, Attorney General,
United States of America, in her
official and individual capacities;
JOSEPH GREENE, District Director,
United States Immigration and
Naturalization Service, Denver,
Colorado, in his official and individual
capacities,

        Defendants-Appellees.

No. 98-1312

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 98-K-926)

Submitted on the briefs:

Jim Salvator, Lafayette, Colorado, for Plaintiffs-Appellants.

Linda A. McMahan, United States Attorney, and Michael E. Hegarty, Assistant U.S. Attorney, Denver, Colorado, and David J. Kline, Deputy Director, and William J. Howard, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendants-Appellees.

---

Before **TACHA** , **McKAY** , and **MURPHY** , Circuit Judges.

---

**McKAY** , Circuit Judge.

---

Plaintiffs-appellants appeal from the district court's denial of attorney's fees and costs for which they applied pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A). [1] Our jurisdiction arises under 28 U.S.C. § 1291. Because we conclude that the district court lacked subject matter

---

[1] The EAJA is also codified in part at 5 U.S.C. § 504, and provides that prevailing parties in certain adversarial administrative proceedings may recover attorney's fees and costs from the government. The Supreme Court has held, however, that because deportation proceedings are not subject to the Administrative Procedures Act, aliens who have prevailed in deportation proceedings are not entitled to recovery of attorney's fees under § 504. *See Ardestani v. INS* , 502 U.S. 129, 139 (1991). Other courts have held, for the same reason, that attorney's fees are not recoverable in immigration cases under the judicial review provision of § 2412(d)(1)(A). *See, e.g., Full Gospel Portland Church v. Thornburgh* , 927 F.2d 628, 631 (D.C. Cir. 1991); *Hashim v. INS* , 936 F.2d 711, 715 (2d Cir. 1991).

-2-

jurisdiction over appellants' underlying *Bivens* [2] class action suit, we remand for entry of an order dismissing the case with prejudice. [3]

## I. Background Facts and Procedures

Plaintiff Tuong Huan Van Dinh [4] is an alien who had permanent resident alien status until he was convicted of a criminal act and was sentenced to deportation. *See* Appellees' Supp. App. at 11, 13. Tuong apparently did not appeal the order of deportation to the Board of Immigration Appeals, *see id.* at 13-14. Instead he filed a habeas corpus action in federal district court, individually and on behalf of others similarly situated, challenging the constitutionality of holding deported aliens for an indeterminate time when their country of origin refuses to allow them reentry. *Cf. Galaviz-Medina v. Wooten*, 27 F.3d 487, 491-94 (10th Cir. 1994) (noting, under former immigration statutes, that habeas petitions are proper vehicle for constitutional claims when alien does

---

[2] *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[3] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

[4] Although Tuong's name is spelled "Thong" in the style of the case before us, we are confident that the proper spelling of his name is "Tuong" and that he is the same plaintiff as the plaintiff named in the habeas corpus action relevant to this case.

not appeal from a final order of deportation but raises constitutional concerns arising from subsequent decisions). The habeas action was filed in March 1998, is numbered in the district court as No. 98-CV-652, and is hereinafter referred to as "the habeas action."

Tuong was incarcerated in a facility in Aurora, Colorado, pending deportation. On April 23, 1998, Tuong and other aliens confined at the Aurora facility were informally notified that "there was a 'distinct probability'" that all Immigration and Naturalization Service (INS) prisoners at that facility would be moved because the INS's contract with the facility would expire on April 28 and there was an impasse in extension negotiations. *See* Appellant's App. at 111 (Class Action Complaint). On April 24, sixty-five "unknown plaintiffs were transferred to various unknown locations." *Id.*

On April 24, Tuong filed an amended application for habeas corpus. *See id.* at 13. He challenged as unconstitutional the possibility of his transfer, alleging that he would be denied his right to counsel if moved to a remote area, and requested the court to either issue a writ directing the INS to place him in another Denver-area facility or order the INS to place him on bail. *See id.* at 8, 17. The same day, he also filed a motion to maintain a class action for the amended application, *see id.* at 22, and a motion for a temporary restraining

-4-

order (TRO) that requested the same remedies as the amended application, *see id.* at 32, 37.

On April 24, the court issued a TRO ordering that Tuong and "the class" not be transferred out of the Denver area before April 27. In the event no stipulation was reached between the parties, the court set a hearing for April 27 on the matters. *See id.* at 102. On April 27, in its response to Tuong's motions, the INS challenged the court's subject matter jurisdiction but also asserted that neither Tuong nor any other alien with matters pending before the federal courts would be transferred out of the Denver area. *See id.* at 46-47, 73-74. It also stated that the INS would "transport back to Colorado as necessary any individuals currently represented over whom the court has jurisdiction and whose presence is required by the immigration court or any federal court." *Id.* at 74.

The day of the hearing, Tuong and the other named plaintiffs filed a *Bivens* class action complaint (numbered in the district court as No. 98-CV-926) which asserted jurisdiction based on 28 U.S.C. § 1331. The complaint requested injunctive relief restraining all alien transfers until local counsel had an opportunity to interview their clients and potential *pro bono* clients, injunctive relief restraining transfer outside the Denver area of those aliens with an established attorney-client relationship (or, in the alternative, ordering that those aliens be released on bail or on their own recognizance), and costs and attorney

fees. *See id.* at 113. Along with the complaint, plaintiffs filed a motion to certify it as a class action, a motion to consolidate the suit with Tuong's habeas action, and another motion for TRO. *See id.* at 105.

At the April 27 hearing on the TRO motion *filed in Tuong's habeas case*, the parties stipulated to the district court that a temporary contract extension with the Aurora facility had been signed, so the TRO issues were moot for the time being. *See* Appellees' Supp. App. at 2. The court denied plaintiffs' motion filed in the *Bivens* class action to consolidate the class action suit with Tuong's habeas action. *See id.* at 3. Plaintiffs then suggested that the court stay everything in the *Bivens* class action until the parties filed a status report, and the court agreed. *See id.* at 4.

The INS executed a new contract for the Aurora facility on May 19, and on May 22, the INS moved the court to dismiss as moot the *Bivens* class action. At a June 3 hearing, the court continued the motion to dismiss for a week. *See id.* at 8. The court then again turned to the motion for TRO filed in Tuong's habeas case. *See id.* at 9. The parties informed the court that they had reached a stipulation with regard to Tuong's bail and that the TRO issues were moot. *See id.*

On June 10, plaintiffs filed their concurrence in the INS's motion to dismiss the *Bivens* class action, along with a motion for attorney fees and costs brought pursuant to the EAJA. *See id.* at 17; Appellants' App. at 105. The court

denied the motion for attorney fees and costs, concluding that plaintiffs had not shown that they were the prevailing party in the underlying *Bivens* class action or that the position of the INS was not substantially justified. *See* Appellant's App. at 244.

## II. Legal Standards

The EAJA requires that a court

> award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action . . . including proceedings for judicial review of agency action, brought by or against the United States *in any court having jurisdiction of that action*, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C.§ 2412(d)(1)(A) (emphasis added). The statute includes an express requirement that a court have subject matter jurisdiction over the underlying action before it may issue an award for fees and costs. *See Powder River Basin Resource Council v. Babbitt*, 54 F.3d 1477, 1482 n.2 (10th Cir. 1995). We review whether a court has subject matter jurisdiction over a *Bivens* action *de novo*. *See Maddick v. United States*, 978 F.2d 614, 615 (10th Cir. 1992). A decision regarding whether attorney fees and costs should be awarded under the EAJA will be reversed only for abuse of discretion. *See Kopunec v. Nelson*, 801 F.2d 1226, 1229 (10th Cir. 1986).

## III. Discussion

On appeal, appellants argue that they were the prevailing parties because the district court issued the April 24 TRO precluding their transfer out of the Denver area until April 27, and that they therefore should have been awarded attorney's fees and costs. *See Kopunec*, 801 F.2d at 1228-29 (stating that "[a] plaintiff prevails for attorney fee purposes if success on a significant issue of litigation achieves some of the benefit the plaintiff sought in bringing the suit"). The INS asserts, *inter alia*, that the district court never had subject matter jurisdiction over the *Bivens* class action suit under 8 U.S.C. § 1252(a)(2)(B)(ii) and 8 U.S.C. § 1252(f), and that denial of attorney's fees was therefore proper.

Section 1252(a)(2)(B)(ii) provides:

> Notwithstanding any other provision of law, no court shall have jurisdiction to review . . . (ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a) of this title.

Appellants argue that this section does not apply because: (1) it does not repeal habeas review under 28 U.S.C. § 2241; (2) it applies only to review of final orders of removal; and (3) it is silent regarding constitutional issues.

Section 1252(f) provides, in part, that

> no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of [§§ 1221-31] of this subchapter . . . other than with respect to the

application of such provisions to an individual alien against whom proceedings under such part have been initiated.

Appellants argue that this section does not apply because it is silent as to habeas jurisdiction and because their statutory right to counsel is not encompassed in §§ 1221-31, but rather is found in 8 U.S.C. § 1362. We address plaintiffs' arguments *seriatim.*

## A. Habeas Arguments

Even though the issue before this court centers on whether the *Bivens* class action was properly before the district court, appellants focus solely on Tuong's amended habeas petition and the rulings in that action, and attempt to bootstrap to any jurisdiction the district court may have had to entertain the original habeas petition. They contend that they "prevailed for EAJA purposes on their habeas claim brought pursuant to § 2241, not on the *Bivens* claim brought pursuant to section 1331." Appellants' Reply Br. at 5. Appellants' contention directly contradicts their motion for attorney fees and costs, which was filed in the *Bivens* class action, not in Tuong's amended habeas action.

Appellants assert that they simply "reformed and re-filed" the habeas claim as a *Bivens* action, erroneously claiming that the plaintiffs in the *Bivens* class action were "the identical parties as petitioners in the habeas claim." Appellants' Reply Br. at 4. The amended habeas petition, however, listed only Tuong, "individually, and on behalf of all other persons similarly situated," and did

-9-

not include the six named plaintiffs in the *Bivens* class action. Appellants' App. at 13. Even if the district court had jurisdiction to hear Tuong's original habeas claims based on alleged illegal indeterminate detention, an issue we do not decide here, that jurisdiction did not automatically extend to the *Bivens* class action which raised totally different issues. For this reason, appellants' argument that the jurisdictional question should hinge on our recent ruling in *Jurado-Gutierrez v. Greene*, Nos. 97-1437, 98-1017, 98-1050, 98-1310, 1999 WL 637038, at *7-*8 (10th Cir. Aug. 19, 1999), in which we held that there remains an independent, alternative right to habeas review in immigration cases under 28 U.S.C. § 2241, notwithstanding the sweeping changes made by the Illegal Immigration Reform and Immigration Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009 (1996), is without merit. The resolution of this matter is simply not governed by habeas law.

## B. Final Order Review

Apparently because § 1252 is headed "Judicial review of orders of removal," and appellants are not requesting review of their final orders of deportation, [5] appellants argue that § 1252(a)(2)(B)(ii) is inapplicable. We have

---

[5] In fact, at least one of the plaintiffs named in the class action was not even yet subject to a final order of deportation, as removal proceedings were still in process. *See* Appellants' App. at 110. This fact further shows why not all plaintiffs in the *Bivens* class action were similarly situated to the unnamed

(continued...)

-10-

indicated that the title of a statute may imply a limitation on a statute's applicability. *See Findlay v. Banks (In re Cascade Energy & Metals Corp.)*, 87 F.3d 1146, 1151 (10th Cir. 1996) (affirming bankruptcy court's conclusion that debtor intended to mislead the court by omitting language in the title and text of statute on which he claimed he relied in good faith). The general rule, however, is that

> [w]here the text is complicated and prolific, headings and titles can do no more than indicate the provisions in a most general manner; to attempt to refer to each specific provision would often be ungainly as well as useless. . . . [T]he heading of a section cannot limit the plain meaning of the text. For interpretative purposes, they are of use only when they shed light on some ambiguous word or phrase. They are but tools available for the resolution of a doubt. But they cannot undo or limit that which the text makes plain.

*Brotherhood of R.R. v. Baltimore & O. R. Co.*, 331 U.S. 519, 528-29 (1947) (citations omitted). Reviewing § 1252, which is both complicated and prolific, we see that it addresses a multitude of jurisdictional issues, including ones that are collateral to the review of a final order of deportation. *See, e.g.,* § 1252(a)(2)(B)(i) (providing that "no court" may review certain of the Attorney General's discretionary grants of relief in, *inter alia*, requests for voluntary departure, cancellation of removal, and adjustment of status); § 1252(e) (limiting

---

[5](...continued)
plaintiffs in Tuong's original habeas petition, so that the parties were not "identical," as appellants now claim.

-11-

jurisdiction to review exclusion orders, including habeas review and collateral constitutional challenges to the validity of the system); § 1252(f) (providing limitations on injunctive relief available in any court other than the Supreme Court); § 1252(g) (barring review in transitional cases of certain discretionary decisions of the Attorney General in any court and in any type of action). We conclude that § 1252(a)(2)(B)(ii) is not limited in application only to review by the circuit courts of final orders of removal.

## C. *Bivens* Jurisdiction

**1. Congressional intent.** A *Bivens* action may be available to remedy a violation of the Due Process Clause, *see, e.g., Davis v. Passman*, 442 U.S. 228, 245 (1979), but is available only when "there are no 'special factors counselling hesitation in the absence of affirmative action by Congress,' no explicit statutory prohibition against the relief sought, and no exclusive statutory alternative remedy." *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988) (quoting *Davis*, 442 U.S. at 245). We must therefore review the immigration statutes to determine whether a *Bivens* class action is available in cases like the one at bar.

Section 1252 indicates a legislative intent to limit review of immigration decisions in federal district courts. Prior to the enactment of IIRIRA, judicial review of immigration decisions, including final orders, could occur either in a federal circuit court of appeals or in a federal district court. *See Cheng Fan*

-12-

*Kwok v. INS* , 392 U.S. 206, 210, 215-16 (1968) (holding that language found in 8 U.S.C. § 1105a(a) (1961) giving circuit courts of appeal exclusive jurisdiction to review final orders was expressly limited to orders made in the course of deportation proceedings or to direct challenges of the deportation order itself, and stating that in all other cases, an alien's remedies would lie first in an action brought in an appropriate district court); *Castaneda v. INS* , 23 F.3d 1576, 1579-80 (10th Cir. 1994) (noting that district courts had jurisdiction to review certain final decisions not associated with deportation proceedings and final orders of deportation under the general jurisdictional grant formerly contained in 8 U.S.C. § 1329 (1988)); 8 U.S.C. § 1105a(a)(10) (1988) (providing that any alien held in custody pursuant to an order of deportation could obtain review by habeas corpus proceedings). In enacting IIRIRA, Congress drastically reduced the review available in the district courts with the intent of "protecting the Executive's discretion from the courts," *Reno v. American-Arab Anti-Discrimination Committee* , 119 S. Ct. 936, 945 (1999) [hereinafter " *AADC* "], in a "streamlined process," in which issues of law and fact "are not subject to separate rounds of litigation," *id.* at 944. IIRIRA repealed § 1105a and replaced it with new § 1252.

The new judicial review statute significantly limited statutory habeas jurisdiction in the district courts. *See* § 1252(e)(2) (1996) (providing for limited habeas review only of exclusion determinations made pursuant to 8 U.S.C. § 1225(b)(1)). Congress also deleted language that limited exclusive jurisdiction in the circuit courts of appeal to review of only those orders arising pursuant to deportation proceedings. *Cf.* § 1105a(a)(1) (1986) (repealed) *with* § 1252(a)(1) (1999). It broadened the scope of exclusive review in the circuit courts of appeal to include all questions of law and fact arising from any action or proceeding brought to remove an alien. *See* § 1252(b)(9) (1999). Congress further amended § 1329 to provide for district court jurisdiction only in cases brought by the United States. *See* Pub. L. No. 104-208, § 381(a). Finally, Congress added subsections that preclude direct review by *any* court of certain discretionary decisions made by the Attorney General. *See* § 1252(a)(2)(B)(i) & (ii); §1252(g); § 1226(e); 8 U.S.C. § 1158(a)(3); § 1158 (b)(2)(D); *see also Saccoh v. INS*, 24 F. Supp. 2d 406, 408-09 (E.D. Pa. 1998) (dismissing cause of action for lack of jurisdiction to review discretionary decisions under § 1252(g) and § 1252(a)(2)(B)(ii)).

**2. Whether review of the actions taken by the Attorney General is encompassed within the immigration statutes such that a *Bivens* action is precluded by statute.** The Attorney General is mandated to "arrange for

-14-

appropriate places of detention for aliens detained pending removal." 8 U.S.C. § 1231(g)(1). The Attorney General's discretionary power to transfer aliens from one locale to another, as she deems appropriate, arises from this language. [6] *See Rios-Berrios v. INS*, 776 F.2d 859, 863 (9th Cir. 1985) (interpreting former statute now codified as § 1231(g)); *Sasso v. Milhollan*, 735 F. Supp. 1045, 1048 (S.D. Fla. 1990) (accord). As mentioned above, § 1252(f) forecloses jurisdiction to grant class-wide injunctive relief to restrain operation of §§ 1221-31 by any court other than the Supreme Court. It is therefore apparent that a district court has no jurisdiction to restrain the Attorney General's power to transfer aliens to appropriate facilities by granting injunctive relief in a *Bivens* class action suit. *See Schweiker*, 427 U.S. at 421 (*Bivens* action unavailable if there is an explicit statutory prohibition against the relief sought). Appellants' argument that § 1252(f) is not applicable because the right to counsel is not found in §§ 1221-31 is unavailing.

Further, § 1252(a)(2)(B)(ii) provides that no court has jurisdiction to review *any* decision or action the Attorney General has discretion to make

---

[6] We also note that § 1231(i)(4)(B) requires the Attorney General to "ensure that undocumented criminal aliens incarcerated in Federal facilities are held in facilities . . . which provide a level of security appropriate to the crimes for which they were convicted." This section also gives the Attorney General authority to transfer aliens to facilities that are, in her discretion, deemed appropriate.

"under this subchapter" except for "the granting of relief under section 1158(a)." "[T]his subchapter," which is subchapter II of Chapter 12 of Title 8, covers §§ 1151-1378, including § 1231. Unless there is some reason we should not give literal meaning to this language, it also appears that a *Bivens* action was not available to appellants because of this specific statutory bar to district court review.

**3. Redundancy**. Although not raised by appellants, we are aware of the principle that a court should not "adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law." *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 836 (1988). In determining the application and scope of § 1252(g), the court in *AADC* addressed redundancy, comparing § 1252(g) with § 1252(b)(9), which it found to be a broad "zipper" clause applying to all immigration decisions. 119 S. Ct. at 943. We have conducted a similar analysis.

Section 1252(a)(2)(B)(ii) is not redundant of § 1252(g) because that subsection applies only to bar review of discrete discretionary decisions in transitional cases. *See id.* It does not render superfluous § 1226(e) (which bars judicial review of the Attorney General's "discretionary judgment regarding the *application* of [§ 1226]") because the bars to review address different types of discretionary judgment. Even if the two statutes provide some overlap, that

redundancy may be reasonably explained because, before IIRIRA, the predecessor statute expressly provided for judicial review of decisions made under that section. *See* 8 U.S.C. § 1252(a) (1988) (amended and recodified, in pertinent part, as § 1226(e)); *Gornicka v. INS*, 681 F.2d 501, 505-06 (7th Cir. 1982). Thus it was reasonable for Congress to expressly withdraw jurisdiction to judicial review in the specific statute rather than to simply delete the provision and rely on the provisions in new § 1252(a)(2)(B)(ii) to bar review.

Two other provisions in the immigration statutes bar judicial review of discretionary decisions. Title 8 U.S.C. § 1229c(b)(1) authorizes the Attorney General, in her discretion, to allow an alien voluntarily to depart the United States in lieu of undergoing removal proceedings. Section 1229c(f) bars review by any court of the "denial of a request for an order of voluntary departure under [§ 1229c(b)]," which at first blush appears to apply to the Attorney General's decision to allow departure. We note, however, that the Attorney General's discretion to permit voluntary departure under § 1229c(b) is specifically conditioned upon the entry of a separate order granting voluntary departure by an immigration judge who must find four conditions to exist before the order may be granted. *See* § 1229c(b)(1). Thus, the bar in § 1229c(f) appears to bar review of the immigration judge's *order* and not to bar review of the Attorney General's

subsequent decision to allow the alien to depart voluntarily pursuant to that order. Interpreted in that manner, the two sections are complementary and not redundant.

There are also separate limitations to review of the Attorney General's discretionary decisions in 8 U.S.C. § 1158, but these provisions are not superfluous because § 1252(a)(2)(B)(ii) expressly excepts the granting of relief under § 1158 from the bar provided in § 1252(a)(2)(B)(ii).

We conclude that § 1252(a)(2)(B)(ii) does not render superfluous other jurisdictional statutes and limits direct review of discretionary decisions and actions related to the custody and detention of aliens who have already been determined to be deportable in a final order. Because the discretionary decision to transfer aliens from one facility to another and the correlative discretionary decision to grant or deny relief from such a transfer is a "decision . . . under this subchapter," judicial review of that decision is expressly barred by § 1252(a)(2)(B)(ii). *Cf. Chavez v. United States INS*, No. Civ. A. 98-1121, 1999 WL 304539, at *2 (W.D. La. Mar. 31, 1999) (concluding that it lacked jurisdiction under § 1252(a)(2)(B)(ii) to review challenges to discretionary decisions in alien's habeas action absent a challenge to the constitutionality of INS proceedings); *Edoo v. Kaplinger*, 47 F. Supp. 2d 769, 773 (W.D. La. 1999) (accord) (stating that "[i]t seems well established that the Constitution has not historically required judicial review of merely discretionary decisions," and citing

*Yang v. INS*, 109 F.3d 1185, 1195 (7th Cir. 1997)).  Because IIRIRA expressly precludes both the remedy requested and direct review of the discretionary decisions at issue, the district court had no jurisdiction to entertain a *Bivens* class action requesting such review and remedy.

## D.  Applicability of this Case to Habeas Analysis

Finally, we respond to appellants' argument that § 1252(a)(2)(B)(ii) and § 1252(f) do not apply to bar review when constitutional due process issues like those alleged in the complaint have been raised.  Initially, we note that the *Bivens* class action complaint requests only prospective injunctive relief based on a hypothetical transfer to a remote area and a totally speculative future violation of due process that would not arise solely from the transfer itself.  *Cf. Committee of Central Am. Refugees v. INS*, 682 F. Supp. 1055, 1064-65 (N.D. Ca. 1988) (holding that a transfer to another INS facility, "standing alone, does not constitute a violation of plaintiffs' due process or statutory rights justifying the issuance of injunctive relief to restrict the Attorney General's discretion" to detain aliens in appropriate INS facilities); *Committee of Central Am. Refugees v. INS*, 795 F.2d 1434, 1435 (9th Cir. 1986) (affirming district court's denial of preliminary injunction that would interfere with Attorney General's discretionary power to choose facility where deportable aliens were detained in absence of proof of actual deprivation of statutory right to counsel or denial of due process).

Thus, the complaint does not allege that an actual or continuing constitutional violation had occurred that could be remedied by judicial action.

We emphasize, however, that our holding in this case has no application to constitutional habeas claims brought pursuant to 28 U.S.C. § 2241. *See Jurado-Gutierrez*, 1999 WL 637038, at \*7-\*8 (holding that review under § 2241 still available notwithstanding express language in IIRIRA barring review "by any court" of final orders of removal for aliens deportable by reason of having committed a criminal offense, and distinguishing between direct and collateral review). While the immigration statutes may not preclude collateral review of constitutional issues in § 2241 habeas cases, an issue we do not decide here, they do preclude direct review of the Attorney General's discretionary decisions in immigration cases by means of a *Bivens* class action suit.

## IV. Conclusion

Because the district court had no jurisdiction to review the Attorney General's discretionary decision to transfer and detain appellants in another INS facility under § 1252(a)(2)(B)(ii) and because the complaint requested a remedy the district court had no jurisdiction to grant under § 1252(f), no *Bivens* class action was available and the court did not have subject matter jurisdiction under 28 U.S.C. § 1331. Having no subject matter jurisdiction over the underlying suit under any other statute, the district court was also without authority to entertain

-20-

the request for award of attorney fees and costs under the EAJA. *See Powder River Basin Resource Council*, 54 F.3d at 1482 n.2.

The judgment of the United States District Court for the District of Colorado is **VACATED** and the case is remanded for entry of an order of dismissal with prejudice.