ANA INTERNATIONAL INC., an Oregon corporation; Honggang Yu, an individual, Plaintiffs–Appellants,

v.

Terry E. WAY, Nebraska Service Center Regional Director, United States Immigration and Naturalization Service, Portland, Oregon; James Ziglar, United States Immigration and Naturalization Service Commissioner; John Ashcroft, Attorney General, Defendants–Appellees.

No. 03–35130.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 13, 2004.

Filed Dec. 16, 2004.

---

Baolin Chen, Chen & Mu, Portland, OR, for the plaintiffs-appellants.

Jacqueline R. Dryden (Argued), Peter D. Keisler, Margaret J. Perry (On the Briefs) Office of Immigration Litigation, Washington, D.C., for the defendants-appellees.

Before: GOODWIN, FLETCHER, and TALLMAN, Circuit Judges.

GOODWIN, Circuit Judge:

This appeal presents the question whether the Attorney General's decision to revoke a visa pursuant to 8 U.S.C. § 1155 is barred from judicial review by a jurisdiction-stripping provision added to the Immigration and Nationality Act ("INA") by the Illegal Immigration Reform and

Immigrant Responsibility Act ("IIRIRA") and codified at 8 U.S.C. § 1252(a)(2)(B)(ii). We hold that the statute does not bar judicial review of a visa revocation decision authorized by § 1155. We therefore reverse the district court's dismissal of this case for want of jurisdiction and remand for a decision whether the Attorney General's order to revoke the petitioner's visa was supported by substantial evidence.

## I. FACTS AND ADMINISTRATIVE HISTORY

Honggang Yu ("Yu") is a citizen of China who currently resides in the United States. Yu was a senior executive with Anshan AEC Group Corporation ("Anshan") when he entered the United States legally on a non-immigrant business visitor visa in June 1994. Yu's purpose in coming to the United States was to investigate business opportunities for Anshan.[1]

As a result of Yu's investigations, Anshan decided to expand its operations to the United States in April 1995. To this end, Yu incorporated ANA in Oregon as a wholly owned subsidiary of Anshan. ANA's primary business is importing and exporting electronic and magnetic materials.

In May 1995, ANA filed a non-immigrant L1-A visa petition with the Immigration and Naturalization Service ("INS"),[2] seeking approval for Yu's stay as a "new office intracompany multinational executive or manager transferee." See 8 U.S.C. § 1101(a)(15)(L) (establishing this visa category); 8 C.F.R. § 214.2(*l*) (2003)

(regulations for admission within the category). The INS approved Yu's L-1A petition on June 10, 1995. On May 28, 1996, ANA applied to extend Yu's L-1A visa. The INS approved the application and extended the visa for two years, until June 10, 1998. On March 27, 1997, ANA filed an I-140 visa petition—an "Immigrant Worker" petition—on Yu's behalf. ANA requested that Yu, as President of ANA, be classified as a multinational executive or manager under 8 U.S.C. §§ 1101(a)(44) and 1153(b)(1)(C). The INS approved this petition on July 31, 1997.

On December 31, 1997, Yu—seeking his "green card"—filed an I-485 application to adjust his status to lawful permanent resident. After a lengthy delay, the INS notified Yu and ANA on March 13, 2001 that it intended to revoke its previous approval of the I-140 petition. The notice of intent to revoke stated that "[t]he record contains insufficient evidence to demonstrate that the beneficiary will be employed in a primarily managerial capacity." ANA responded with rebuttal documents. On April 26, 2001, the INS nevertheless affirmed its decision to revoke its prior approval of the I-140 petition, stating that "it appears that the beneficiary will be involved in the performance of routine operational activities of the company rather than in the management of a function of the business."

ANA appealed to the Administrative Appeals Unit ("AAU") of the INS. The AAU upheld the adjudication officer's determination that ANA had failed to establish

1. Because this case was dismissed under Rule 12(b)(1) for want of jurisdiction, we assume the facts alleged in the complaint are true. Fed.R.Civ.P. 12(b)(1); *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 1 (9th Cir.2003).

2. On March 1, 2003, the INS ceased to exist, and its functions were transferred to the De-

partment of Homeland Security ("DHS"). We continue to refer to the INS, as it was the agency involved in all actions relevant to this appeal. For ease of reference and consistent with the language in 8 U.S.C. § 1155, we also continue to refer to the "Attorney General" as the official whose authority to revoke a visa is in question.

that Yu was to be employed in a primarily managerial or executive capacity as defined in 8 U.S.C. § 1101(a)(44). The AAU also stated that there was no evidence that Yu had been employed in a managerial or executive capacity for at least one year prior to his entry into the United States, as required by 8 C.F.R § 204.5(j)(3)(i)(B), and that there was conflicting evidence about whether ANA was genuinely a 100–percent owned subsidiary of a Chinese company, as required by 8 C.F.R. § 204.5(j)(3)(i)(C).

Yu and ANA filed the present action in district court, challenging the AAU's final revocation decision as unsupported by substantial evidence. The government argued that the district court lacked subject matter jurisdiction on the grounds that the revocation decision is committed to agency discretion under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701(a)(2), and that, in the alternative, review was barred by 8 U.S.C. § 1252(a)(2)(B)(ii).

The district court agreed that 8 U.S.C. § 1252(a)(2)(B)(ii) precluded judicial review and dismissed the action in a published opinion. *ANA Int'l, Inc. v. Way*, 242 F.Supp.2d 906 (D.Or.2002). Yu and ANA timely appeal. Whether we have jurisdiction is a question of law that we review de novo. *See Luong v. Circuit City Stores, Inc.*, 368 F.3d 1109, 1111 n. 2 (9th Cir. 2004).

## II. DISCUSSION

■ The default rule is that agency actions are reviewable under federal question jurisdiction, pursuant to 28 U.S.C. 17049 § 1331 and reinforced by the enactment of the Administrative Procedure Act ("APA"), even if no statute specifically authorizes judicial review. *Reno v. Catholic Soc. Serv., Inc.*, 509 U.S. 43, 56–57, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993). This general rule applies in the post-IIRIRA

immigration context. *See Spencer Enterprises, Inc. v. United States*, 345 F.3d 683, 687–88 (9th Cir.2003).

The government raises two considerations in support of its contention that the default rule does not apply here and that the district court lacks jurisdiction to review the Attorney General's decision to revoke a visa. First, the government argues that the Attorney General's decision is unreviewable because it is "committed to agency discretion by law" within the meaning of the APA. 5 U.S.C. § 701(a)(2). Second, the government argues that judicial review of the Attorney General's decision is precluded by 8 U.S.C. § 1252(a)(2)(B)(ii), which provides in relevant part that "no court shall have jurisdiction to review ... any [ ] decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General[.]"

■ Because the jurisdiction-stripping provision of IIRIRA that is at issue supersedes the jurisdiction-limiting provision in the APA, we decline to reach the question whether the APA precludes judicial review of visa revocation decisions. The operation of § 701(a)(2) of the APA is narrowly limited to "rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." *Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) (internal quotations omitted) (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)). Moreover, the applicable law may be derived from agency practice, unlike under the IIRIRA rule, thereby narrowing the class of disputes rendered unreviewable. *See Spencer*, 345 F.3d at 691. Thus, any decision that is precluded from review by § 701(a)(2) of the APA is also precluded from review by the more power-

ful jurisdiction-stripping provision of IIRI-RA. Conversely, any determination that passes the more stringent IIRIRA test, remaining subject to judicial review, also passes the lower bar of the APA test. As a result, we need analyze only the operation of IIRIRA rule.

## A. Applicability of § 1252(a)(2)(B)(ii)

The ultimate question presented is whether the jurisdiction-stripping power of § 1252(a)(2)(B)(ii) is triggered. We assume for the purposes of this case the *applicability* of the provision, i.e., we assume that we must pose and answer the question at the heart of § 1252(a)(2)(B)(ii): is the authority for the visa revocation decision specified by the statute to be "in the discretion of the Attorney General"? The Ninth Circuit has never squarely decided whether § 1252(a)(2)(B)(ii) in fact applies outside the context of removal proceedings, and other circuits do not agree whether the section applies to visa revocation.[3] We also decline to resolve that question here, because our holding that visa revocation decisions are not specified by the statute to be in the discretion of the Attorney General under the meaning of § 1252(a)(2)(B)(ii) is sufficient to decide the case.

## B. Background Interpretive Principle

■ Our analysis is informed by the interpretive principle that there is a "strong presumption in favor of judicial review of administrative action" governing the construction of jurisdiction-stripping provisions of IIRIRA, as articulated by *INS v. St. Cyr*, 533 U.S. 289, 298, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). Even where the ultimate result is to limit judicial review, the Court cautions that as a matter of the interpretive enterprise itself, the narrower construction of a jurisdiction-stripping provision is favored over the broader one. *See Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. 471, 480–482, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (rejecting the Ninth Circuit's "broad reading of § 1252(g)"). Our Circuit has applied this admonition to conclude that a "jurisdictional bar is not to be expanded beyond its precise language." *Kwai Fun Wong v. United States INS*, 373 F.3d 952 (9th Cir.2004) (interpreting § 1252(a)(2)(B)).

## C. Meaning of § 1252(a)(2)(B)(ii)

■ It is clear that § 1252(a)(2)(B)(ii) immunizes certain discretionary decisions of the Attorney General from judicial review. It is equally clear that not every decision of the Attorney General that involves some element of discretion is automatically shielded ·from review by § 1252(a)(2)(B)(ii). In general terms, if a legal standard from an appropriate source governs the determination in question, that determination is reviewable for a clarification of that legal standard. In other words, acts immunized from review by § 1252 "are matters of pure discretion, rather than discretion guided by legal standards." *Spencer*, 345 F.3d at 690. *See also Nakamoto v. Ashcroft*, 363 F.3d

---

**3.** The Sixth, Tenth, and Seventh Circuits have held that § 1252(a)(2)(B)(ii) does apply outside the context of removal decisions. *See El–Khader v. Monica*, 366 F.3d 562, 566 (7th Cir.2004); *CDI Info. Servs. Inc. v. Reno*, 278 F.3d 616, 620 (6th cir.2002); *Van Dinh v. Reno*, 197 F.3d 427, 434 (10th Cir.1999). Several district courts, however, have held that this section applies only to decisions made in the course of removal proceedings. *See Spencer*, 345 F.3d at 692 (citing *Talwar v. INS*, 2001 WL 767018, *4 (S.D.N.Y. July 9, 2001)); *Mart v. Beebe*, 94 F.Supp.2d 1120, 1123–24 (D.Or.2000); *Burger v. McElroy*, 1999 WL 203353, *1 (S.D.N.Y. Apr.12, 1999); *Shanti v. Reno*, 36 F.Supp.2d 1151, 1157–60 (D.Minn.1999).

874, 878 (9th Cir.2004). Although the district court did not have the benefit of these recent decisions, the law of our Circuit is unequivocal on this point. The division in authority about the meaning of § 1252(a)(2)(B)(ii) can be distilled as a disagreement about the appropriate sources of this legal standard, and the source of this disagreement is worth exploring.

The relevant provision of IIRIRA is now codified at 8 U.S.C. § 1252(a)(2)(B)(ii). Section 1252, including the relevant subsection, provides:

Judicial review of orders of removal

(a) Applicable provisions

(1) General orders of removal

* * *

(2) Matters not subject to judicial review

(A) Review relating to section 1225(b)(1) [Inspection of aliens arriving in the United States]

* * *

(B) Denials of discretionary relief Notwithstanding any other provision of law, no court shall have jurisdiction to review—

(i) any judgment regarding the granting of relief under section 1182(h) [waiver of inadmissibility], 1182(i) [waiver of inadmissibility], 1229b [cancellation of removal], 1229c [voluntary departure], or 1255 [adjustment of status] of this title,

(ii) *any other decision or action of the Attorney General the authority for which is specified under this sub-chapter[§§ 1151–1378] to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a) [asylum] of this title.*

8 U.S.C. § 1252 (emphasis added to indicate relevant subsection).

■ While courts have differed in their interpretation of the phrase "specified . . .

to be in the discretion of the Attorney General," a certain floor of agreement exists. At a minimum, if the statutory provision granting the Attorney General power to make a given decision also sets out specific standards governing that decision, the decision is not "in the discretion of the Attorney General." *See Spencer,* 345 F.3d at 691 (holding that the standards laid out by 1153(b)(5), which grants the authority to issue certain visas, render that authority non-discretionary under the meaning of § 1252(a)(2)(B)(ii)). Other circuits do not disagree. *See El–Khader v. Monica,* 366 F.3d 562, 568 (7th Cir.2004) (searching for legal standards governing visa revocation decisions in the language of § 1155); *Firstland Int'l Inc. v. INS,* 377 F.3d 127, 131 (2nd Cir.2004) (stating that "courts retain jurisdiction to review" whether the mandatory notice requirements contained in § 1155 have been met).

■ As for legal standards embedded in the authority-granting provision and spelled out elsewhere in the INA or in federal law more generally, the Ninth Circuit rule is that federal courts retain jurisdiction under § 1252 to decide any questions of law that may arise with respect to these standards. *Montero–Martinez v. Ashcroft,* 277 F.3d 1137, 1141 (9th Cir. 2002) (deciding that the courts retain jurisdiction to review a "purely legal and hence non-discretionary question" arising under an Attorney General decision specifically protected by § 1252(a)(2)(B)(I)); *Kwai Fun Wong,* 373 F.3d at 963 (holding that "decisions made on a purely legal basis," whether or not that basis is specified in the INA, and including the Constitution, "may be reviewed, as they do not turn on discretionary judgment"). Again, there is no explicitly conflicting authority on this point. The Seventh Circuit in *El–Khader,* indeed, implicitly agreed that legal standards outside § 1155 may serve as an an-

chor for jurisdiction by looking to the INS regulations in search of standards governing visa revocation, although it did not find any there. 366 F.3d at 568.

■ Finally, there is the question of standards gleaned from regulations and agency practice. Under *Spencer*, the scope of the § 1252 inquiry, unlike the APA inquiry it supersedes, is limited to the statute; standards gleaned from agency practice cannot provide a basis for review. 345 F.3d at 691. The dissent reads *Spencer* to not only rule out agency practice as an independent basis for jurisdiction, but further finds a restrictive rule of construction for understanding the authority-granting statute itself (in this case, § 1155).

*Spencer* makes a distinction between permissible and impermissible sources of the legal standards that may form the basis for jurisdiction. It then tells us that the authority-granting statute is a permissible source, and that agency practice is not. 345 F.3d at 691. Positively, *Spencer* tells us to look to the statute as a permissible source of the legal standards that will permit review under § 1252; it does not go on to prescribe particular rules of statutory construction with which we should read that statute. Presumably, we are to employ the methods of construction that we would ordinarily use to understand a statute. Looking to judicial precedent is one of those ordinary methods. Negatively, *Spencer* instructs us not to look to agency practice as an independent source of law. But *Spencer* does not cast aside the agency's own published interpretation of its statute to help us decide what the statute means. There must, in other words, be an anchor in the statutory language itself to render the rule imposed by the decision relevant to our inquiry. We do not violate *Spencer* by turning to the statute in search of a legal standard, and

upon finding one, turn to relevant case-law, which may include BIA cases and, of course, our own decisions construing § 1155, in order to understand what that standard means.

## D. Meaning of the Underlying Statutes

■ Whichever interpretation of the test contained in § 1252(a)(2)(B)(ii) (and derivatively, in *Spencer*) we adopt, the next step is to apply that test to the visa revocation context. More specifically, we must apply the test to § 1155 and any other statutes that govern the Attorney General's decision. We hold that the "good and sufficient cause" language contained in § 1155 (together with its Ninth Circuit and BIA interpretations) and the definition of "managerial capacity" upon which the original INS revocation decision as well as the AAU decision depended (codified at 8 U.S.C. § 1101(a)(44)) each constitutes a legal standard the meaning of which we retain jurisdiction to clarify.

### 1. Section 1155

Section 1155 provides, in relevant part, that the Attorney General "may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition [for an immigrant visa]." 8 U.S.C. § 1155. The "may, at any time, for what he deems to be" portion of the key phrase plainly authorizes some measure of discretion. Indeed, *El–Khader's* § 1252 analysis seems to begin and end with this observation. 366 F.3d at 567. The dissent agrees with the implication of *El–Khader* that the deeming power of the Attorney General is unfettered and plenary. However, this reading ignores the "good and sufficient cause" portion of the same phrase. To put a purely subjective construction on the statute is to render the words "good and sufficient cause" meaningless. Congress did not have to put those words there, and

in many other instances it did not. Neither half of the relevant phrase by itself captures the meaning of the provision. The search for meaning is not well-served by carving the phrase into discrete components, counting up the permissive bits and the constraining bits and tallying the score. Rather, the key to understanding the provision is to look holistically at the language "for what he deems to be good and sufficient cause." What does it mean to deem something to be a good and sufficient cause? Is it to decide the general *principles* under which individual decisions to revoke a visa should be made? Or is it to identify, in a particular case, the specific *factual ground* upon which a particular visa is to be revoked?

■ Fortunately, the Ninth Circuit and BIA rule answers this question for us, making it clear that the authority of the Attorney General to revoke visa petitions is bounded by objective criteria. *Tongatapu Woodcraft Hawaii, Ltd. v. Feldman,* 736 F.2d 1305 (9th Cir.1984) (holding that § 1155 furnishes a meaningful legal standard); *Matter of Tawfik,* 20 I. & N. Dec. 166 (BIA 1990) (concluding that a visa is revoked "for 'good and sufficient cause' when the evidence of record at the time of issuance . . . would warrant a denial of the visa petition . . .") Thus, we are bound to the narrower interpretation, in which "good and sufficient cause" refers to a meaningful standard that the Attorney General may "deem" applicable or inapplicable in a particular case, but which he does not manufacture anew in every new instance. The ambiguous statutory language in § 1155 has been on the books for 52 years-long before the passage of IIRIRA-and Congress was on notice of the BIA construction of this language when drafting IIRIRA. The fact that these decisions predate IIRIRA in no way diminishes their authority for clarifying the meaning of § 1155 (as opposed to their authority for deciding the ultimate jurisdictional question). IIRIRA changed the criteria for determining when we have jurisdiction to review immigration decisions; it did not change the criteria for determining when it is proper to revoke a visa petition. Indeed, we are not unaware that we have, in various unpublished dispositions, reviewed visa revocation decisions under *Tongatapu* and *Matter of Tawfik* since the passage of IIRIRA.

*Spencer* instructs us to ask, in applying § 1252(a)(2)(B)(ii), whether "the right or power to act is *entirely* within [the Attorney General's] judgment or conscience." 345 F.3d at 690 (emphasis added). Given the construction of § 1155 by which we are bound, the right or power to act is *not entirely* within the Attorney General's judgment or conscience. Our application of the *Spencer* test is indeed validated by that court's own application of its holding to § 1155: looking to *Tongatapu, Spencer* plainly states that "the text of § 1155 no more specifies visa decisions to be in the unfettered discretion of the Attorney General than does the text of §§ 1153(b)(5) and 1154(b)." 345 F.3d at 692 n. 4. Finally, we are guided here, as elsewhere, by the general rule to resolve any ambiguities in a jurisdiction-stripping statute in favor of the narrower interpretation. Not only is that narrower interpretation compelled by our own and the BIA's rule regarding the meaning of the § 1155 grant of power, it is also explicitly endorsed by the leading Ninth Circuit case on the nature of the § 1252(a)(2)(B)(ii) inquiry.

*2. Section 1101(a)(44)*

The decision to revoke Yu's visa was governed not only by § 1155 but also by § 1101(a)(44), which defines the notion of "managerial capacity" upon which the decision relied. This subsection provides de-

tailed criteria for determining, for any purpose governed by another section of the immigration law, whether someone is employed in a managerial capacity. Both Yu's initial L–1A petition and later I–140 petition seek to classify him as a manager. The adjudication officer who issued the original notice of intent to revoke and the subsequent notice of revocation relied upon the determination that Yu was not primarily employed in a managerial capacity, and the AAU upheld that conclusion.

 When the Attorney General relies upon discrete legal classifications of an individual or an act to reach a decision, even where that decision involves a certain measure of discretion, the meaning of that particular legal classification nevertheless remains a reviewable point of law.[4] Montero Martinez involved a decision regarding cancellation of removal. While cancellation of removal is *per se* a discretionary decision insofar as it is expressly listed in 1252(a)(2)(B)(i), the court there held that it retained jurisdiction to review the "purely legal and hence non-discretionary question whether[petitioner's] adult daughter qualifies as a 'child' for the purposes of § 1229b(b)(1)(D)." 277 F.3d at 1141. The rule then is that any purely legal, non-discretionary question that was a decision factor remains reviewable, whether or not the decision as a whole is discretionary. *See also Nakamoto v. Ashcroft,* 363 F.3d 874, 878 (9th Cir.2004) (holding that under § 1252(a)(2)(B)(ii), a partially discretionary removal decision based on "whether a petitioner committed marriage fraud is not a decision the authority for which is specified under the

INA to be entirely discretionary"). Similarly, whether Yu was employed primarily in a managerial capacity as defined by § 1101(a)(44) is not a decision which is specified under the INA to be entirely discretionary. The district court retains jurisdiction under § 1252(a)(2)(B)(ii) to review that determination.

## CONCLUSION

We hold that § 1155 and § 1101(a)(44) furnish objective legal criteria for testing whether Yu's visa petition was properly revoked, and that we retain jurisdiction to review that decision under § 1252(a)(2)(B)(ii).

### REVERSED AND REMANDED.

TALLMAN, Circuit Judge, dissenting:

The court today holds that 8 U.S.C. § 1252(a)(2)(B)(ii) does not bar judicial review of the Attorney General's discretionary decision to revoke a previously approved visa petition when he decided that the alien failed to abide by the conditions under which the visa was first obtained. This conclusion disregards binding precedent from this circuit while creating a conflict with other circuits, conflicts with congressional intent in stripping judicial review over certain immigration decisions, and results in an unwarranted expansion of federal jurisdiction into the minutiae of visa administration at a time when we are awash in immigration cases. I respectfully dissent.

### I

Because Congress has said that we lack jurisdiction, I first address a question the

---

4. *El–Khader* holds, in effect, that a visa revocation decision that is based upon a specified legal ground is not reviewable under that ground, so long as the statute does not *require* the Attorney General to make his decision under that standard. 366 F.3d at 568. The implication is that because § 1155 does not mention *any* specific ground of decision, the Attorney General's discretion is never constrained, even when he has adduced a specific statutory standard in support of his decision. This result, however, is in direct conflict with our precedent. *See supra* discussion at 894.

court does not: whether the Immigration and Nationality Act's (INA) jurisdictional bar, 8 U.S.C. § 1252(a)(2)(B)(ii),[1] applies outside the context of removal proceedings. *See* Maj. Op. at 891; *see also Spencer Enters., Inc. v. United States*, 345 F.3d 683, 692 (9th Cir.2003) (explicitly leaving the question open). This question arises because of a discrepancy between the title of § 1252—"Judicial Review of Orders of Removal"—and the actual statutory language, which encompasses all discretionary decisions by the Attorney General under "this subchapter." *See* 8 U.S.C. § 1252(a)(2)(B)(ii). The subchapter in question covers 8 U.S.C. §§ 1151–1378, provisions that govern not just orders of removal but also admission and adjustment of status, asylum, and registration and documentation of aliens. Because "the heading of a section cannot limit the plain meaning of the text[,]" *Bhd of R.R. Trainmen v. Baltimore & Ohio Ry. Co.*, 331 U.S. 519, 529, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947), I would join the Seventh, Sixth, and Tenth Circuits to hold that § 1252(a)(2)(B)(ii)'s jurisdictional bar is not limited to removal proceedings. *See Samirah v. O'Connell*, 335 F.3d 545, 549 (7th Cir.2003), *cert. denied*, — U.S. ——, 124 S.Ct. 2811, 159 L.Ed.2d 246 (2004); *CDI Info. Servs. v. Reno*, 278 F.3d 616, 620 (6th Cir.2002); *Van Dinh v. Reno*, 197 F.3d 427, 434 (10th Cir.1999); *see also Systronics Corp. v. INS*, 153 F.Supp.2d 7, 11 (D.D.C.2001); *Avramenkov v. INS*, 99 F.Supp.2d 210, 214 (D.Conn.2000). *Contra Mart v. Beebe*, 94 F.Supp.2d 1120, 1123–24 (D.Or.2000); *Shanti v. Reno*, 36 F.Supp.2d 1151, 1159 (D.Minn.1999).

## II

The INA's jurisdiction-stripping provision forbids our review of any "decision or action of the Attorney General the authority for which is specified under [8 U.S.C. §§ 1151–1378] to be in the discretion of the Attorney General[.]" 8 U.S.C. § 1252(a)(2)(B)(ii). We have construed this language to mean that the requirements of § 1252(a)(2)(B)(ii) are met when "the right or power to act is entirely within [the Attorney General's] judgment or conscience. Such acts are matters of pure discretion, rather than discretion guided by legal standards." *Spencer*, 345 F.3d at 690. We have also held that "such standards must be found in the statutes; if the statute specifies that the decision is wholly discretionary, regulations or agency practice will not make the decision reviewable." *Id.* at 691.

A common sense reading of the language of § 1155, in conjunction with § 1252(a)(2)(B)(ii), leads ineluctably to the conclusion that the Attorney General's visa revocation decisions are discretionary. Having once decided to issue the visa, the Attorney General can later decide to revoke it when he is satisfied that good and sufficient cause exists to do so. The alien here procured a business visa based on representations that he would manage a Chinese subsidiary in Oregon called ANA International, Inc. Once the Attorney General learned that the alien was doing something besides managing the business,[2] he

---

1. 8 U.S.C. § 1252(a)(2)(B) provides:

 (B) Denials of discretionary relief Notwithstanding any other provision of law, no court shall have jurisdiction to review—
 (i) any judgment regarding the granting of relief under section ... 1255 of this title, or
 (ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a) of this title.
 *Id.*

2. The court's opinion creates an artificial distinction between the decision that Yu was not acting in a managerial capacity and the deci-

decided he had good cause to revoke the visa. Congress has said that federal courts should not review these kinds of Executive Branch determinations.

The court nonetheless holds that we have jurisdiction because under § 1155 "the right or power to act is plainly not entirely within the Attorney General's judgment or conscience." Maj. Op. at 894. There are two major problems with this holding.

### A

First, the court's holding is contrary to the express language of the 1996 IIRIRA statute, which says "[t]he Attorney General *may, at any time, for what he deems to be good and sufficient cause,* revoke the approval of any [visa] petition approved by him[.]" 8 U.S.C. § 1155 (emphasis added). The statute does not say that the Attorney General may revoke a previously granted visa petition for "good and sufficient cause." If it did, I might be inclined to agree with the court's reading. Moreover, the court fails to consider and give effect to the words directly adjacent to that phrase, which provide that the Attorney General "may" revoke a visa petition "at any time" for "*what he deems to be* good and sufficient cause[.]" 8 U.S.C. § 1155 (emphasis added); see also *Spencer,* 345

F.3d at 691 n. 4 (taking the phrase "good and sufficient cause" out of context, in dicta, by omitting the preceding words "for what he deems to be"). I simply cannot agree that this language limits the Attorney General's discretion and gives judges the right to substitute their own notions of what evidence is "good and sufficient" to permit the Attorney General to act as he thinks best. Instead, § 1155 provides that the Attorney General gets to decide whether and when to act for whatever reasons he alone believes are good and sufficient.

The Seventh Circuit agrees that "the discretionary nature of the [Attorney General's] decision is apparent from the plain language of the statute." *El–Khader v. Monica,* 366 F.3d 562, 567 (7th Cir.2004). The *El–Khader* court was struck, as am I, by the "permissive 'may' and a temporal reference to 'at any time[,]' " and concluded that such language "plainly signifies a discretionary decision." *Id.* The Seventh Circuit also observed that the "determination of whether there exists 'good and sufficient cause' ... necessarily is highly subjective, and there exist no strict standards for making this determination." *Id.*

If the statutory language "may, at any time, for what he deems to be" indicates a "purely legal and hence non-discretionary"

---

sion to revoke his visa as justification for holding that judicial review is not foreclosed. The court reasons that "whether or not the [visa revocation] decision as a whole is discretionary" the Attorney General's decision as to whether Yu was acting in a managerial capacity "remains reviewable" because it is a "purely legal, non-discretionary question" that was a "decision factor" in the ultimate revocation decision. *See* Maj. Op. at 893 (citing *Montero–Martinez v. Ashcroft,* 277 F.3d 1137, 1141–42 (9th Cir.2002)). This logic completely ignores the plain language of § 1155, which establishes that the revocation decision itself—necessarily including the "decision factors" that support it—is unreview-

able. *See infra* Part II(A). The court's extremely broad reading of *Montero–Martinez* gives too much meaning to § 1101, which merely defines terms to inform the Attorney General's exercise of discretion. *Montero–Martinez* cannot be extended to hold that jurisdiction to review an act is conferred by statutory definitions which inform the Attorney General's exercise of discretion. If the court's view is correct and we can review the "decision factors" that influence even the most recognizable discretionary decisions, then no decision is truly unreviewable. This is not the intent of Congress as enunciated in § 1252(a)(2)(B).

decision such that review of the decision is permitted under the *Montero–Martinez* exception to the § 1252 jurisdictional bar, it is difficult to contemplate what *would* be an unreviewable discretionary act. *See Montero–Martinez*, 277 F.3d at 1141. Congress does not use the same formulaic language each time it grants discretion to the Attorney General. *See* 8 U.S.C. § 1182(a)(9)(B)(v) ("The Attorney General has sole discretion to waive. . . ."); 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review."); 8 U.S.C. § 1229b(b)(2)(D) (". . . shall be within the sole discretion of the Attorney General."); *see also* 8 U.S.C. § 1158(b)(1) ("The Attorney General may grant asylum . . . ."). Though it might make our job a bit easier, we should not require our lawmakers to recite the words "sole and unreviewable discretion" as some sort of talismanic incantation before we can conclude that a statute means what it says. It is the function that matters here, not the form. I would join the Seventh Circuit and hold that the plain language of § 1155 vests the Attorney General with unreviewable discretion.

### B

The second problem with the court's holding lies in its failure to follow the guidance of *Spencer*. In *Spencer* we stated that we are barred from review when a statute provides that the Attorney General may take action as a "matter[ ] of pure discretion, rather than discretion guided by legal standards." 345 F.3d at 690. Any such legal standards "must be found in the statutes; if the statute specifies that the decision is wholly discretionary, regulations or agency practice will not make the decision reviewable." *Id.* at 691.

This rule stands in contrast to the manner in which we review the Administrative Procedure Act's jurisdictional bar, where even wholly discretionary decisions may be reviewed under an "arbitrary and capricious" standard if agency regulations or practice provide a standard by which the agency's conduct can be judged. *Spencer*, 345 F.3d at 691. It is thus particularly curious that the court chooses to rely upon a pre-IIRIRA case, *Tongatapu Woodcraft Hawaii, Ltd. v. Feldman*, 736 F.2d 1305 (9th Cir.1984), for the proposition that " § 1155 furnishes a meaningful legal standard." *Tongatapu* discussed the former INS's burden of production under the APA's arbitrary and capricious review standard. *See* 736 F.2d at 1308. It did not purport to address subject matter jurisdiction, nor could it have done so, since IIRIRA had not yet been enacted. Thus, *Tongatapu* has no bearing on whether now, post-IIRIRA, § 1155 limits the Attorney General's discretion for purposes of the jurisdictional bar in § 1252.

The court also relies on the BIA's interpretation of the phrase "good and sufficient cause" in *Matter of Tawfik*, 20 I. & N. Dec. 166 (BIA 1990), to demonstrate that this phrase confines the Attorney General's discretion. *See* Maj. Op. at 894. By adopting the BIA's interpretation, the court has drawn this legal standard from agency practice; it is found *nowhere in the statute*. This directly contradicts the teaching of *Spencer*. *See* 345 F.3d at 691. While the INA does provide extensive eligibility criteria that the agency must consider when *initially granting* certain visas, *see id.* at 692 (construing 8 U.S.C. § 1153(b)(5)(A)), such legal standards are absent from the distinct decision to *revoke* a previously approved visa. Following *Spencer*, I would hold that § 1155's statutory language contains no legal standards by which the Attorney General's decision must be guided.

Looking to case law and agency practice may inform our interpretation of a statute, but it cannot overtake the language of the statute itself.[3] If § 1155 required only "good and sufficient cause" for the Attorney General to revoke the approval of a visa petition, I would be comfortable looking to BIA practice to interpret the legal standard "good and sufficient cause." However, the statute explicitly provides that this standard comes only from the Attorney General himself, as he may act "for what he deems to be good and sufficient cause." 8 U.S.C. § 1155 (emphasis added). Not only does he decide whether such cause exists, he decides what constitutes such cause in the first place. It is impermissible statutory interpretation to seize upon agency practice to read the explicit grant of discretion ("may, at any time, for what he deems to be") out of the statute.

In his Spencer dissent, Judge Beezer accurately characterizes this kind of tortured analysis as "linguistic gymnastics." 345 F.3d at 695. The majority's routine starts well by looking to § 1155 for a grant of discretion, but makes a convoluted dismount from the dictates of § 1252 when it recharacterizes the nature of the Attorney General's decision under § 1155 in order to reach the conclusion that there is a right to judicial review. This fancy footwork is missing one essential step: adherence to the language of the entire statute. I respectfully dissent from the court's dis-

regard of clear statutory language and our own binding precedent to create an unnecessary circuit split, which results in an unlimited expansion of federal court jurisdiction into discretionary Executive Branch decisions.

---

3. Citing to a footnote in Spencer, the court claims that its view that § 1155 does not grant unfettered discretion is "explicitly endorsed by the leading Ninth Circuit case on the nature of the § 1252(a)(2)(B)(ii) inquiry." Maj. Op. 894. This footnote is not relevant to the holding of Spencer, and although it is framed as a response to a dissenting argument, the argument referenced in the footnote does not actually appear in the dissent. The footnote is thus not only irrelevant to the holding of Spencer, but likely a mistake—a

response by the Spencer majority to an argument that was made in a previous draft of Judge Beezer's dissenting opinion but that did not make it into the final version filed. It is the purest form of dicta. No standard of statutory interpretation of which I am aware would permit using this extremely dubious authority to contradict the plain language of § 1155.